MOBILE & O. R. Co. *et al. v.* MAYOR AND ALDERMEN OF
UNION CITY.*

*(Jackson.*  April Term, 1917.)

1. EMINENT DOMAIN.  Property subject.  Property devoted to
   public use.

   Property already devoted to a public use may be by the legisla-
   ture appropriated to another inconsistent public use, though it
   cannot be taken for an inconsistent use, unless the legislature
   has clearly manifested an intention to do so.  (*Post, pp.* 489-492.)

   Case cited and approved: Railroad v. Memphis, 126 Tenn., 267.

   Case cited and distinguished: Railroad Co. v. Cemetery Co., 116
   Tenn., 400.

   Code cited and construed: Secs. 1324-1348 (1858).

2. STATUTES.  Title of act.  Municipal charter.  Eminent
   domain.

   The title of Priv. Acts 1915, chapter 93, which was an act to
   amend a city charter, so as to increase and enlarge the powers of
   eminent domain, is broad enough to include a grant to the
   city of the right to condemn for street extension property al-
   ready devoted to public use for railroad tracks and buildings,
   so that the act did not violate Const. art. 2, section 17.  (*Post,
   p.* 492.)

   Constitution cited and construed: art. 2, sec. 17.

3. EMINENT DOMAIN.  Authority of city.  Statute.  Condem-
   nation of railroad property.

   The provision of Priv. Acts 1915, chapter 93, section 2, giving a
   city specific authority to extend its streets through and across

---

*Authorities discussing the question of right to take railroad
property for municipal purposes, are collated in a note in 2 L. R. A.
(N. S.), 227.

   On necessity of taking particular land by eminent domain, as a
judicial question, see note in 11 L. R. A. (N. S.), 940.

   Generally on the question of judicial power over eminent do-
main, see comprehensive note in 22 L. R. A. (N. S.), 1.

   On estoppel of municipality to open or use street, see note in
46 L. R. A. (N. S.), 1211.

tracks, switchyards, depot buildings, and grounds, of any corporation within the city, and section 3, vesting the city with power to condemn such property for the purpose of street extension, sufficiently specify the property to be taken to confer authority to condemn it, though it has already been devoted to public use. (*Post, pp.* 492-495.)

Acts cited and construed: Acts 1915, ch. 93, sec. 2.

Cases cited and approved: Ex parte Russell, 19 Ves. Jr., 163; Ex parte Postmaster General, 10 Ch. D., 595; In re Cuckfield Burial Board, 19 Beav., 153, United States v. Herron, 20 Wall., 251; Jones v. Tatham, 20 Pa., 398; Stoughton v. Baker, 4 Mass., 522; People v. Rossiter, 4 Cow. (N. Y.), 143; In re New York, 135 N. Y., 253; Pittsburgh, F. E. W. & C. R. Co. v. Sanitary District of Chicago, 286.

4. **EMINENT DOMAIN. Necessity. Determination of question. Power of courts.**

Where the legislature has specifically empowered a city to condemn railroad property for street extensions, the question of the necessity for such extensions cannot be brought before the court. (*Post. pp.* 495, 496.)

5. **ESTOPPEL. *Municipal corporations. Defenses.***

An agreement by city authorities that, if railroad companies would erect a union depot, the city would not attempt to open streets through the premises, does not estop the city from condemning the right to extend its streets through the premises after the erection of the depot, since the power of eminent domain is inalienable, and no legislature or municipal authority can bind itself or its successors not to exercise it when public necessity and convenience require. (*Post, pp.* 496, 497.)

Case cited and approved: Portland v. Inman-Poulsen Lumber Co., 66 Ore., 86.

---

FROM OBION

---

Appeal from the Chancery Court of Obion County.— COLIN P. McKINNEY, Chancellor.

W. H. SWIGGART, CLAUDE WALLER, W. E. HUDGINS, and C. G. BOND, for complainants.

J. A. WHIPPLE, and PIERCE & FRY, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

The bill in this case was filed to enjoin two condemnation suits brought by Union City for the purpose of opening up a street over the rights of way and depot grounds of the complainant railroad companies. There was a decree for the defendant below, from which complainants have appealed to this court.

The lines of the Mobile & Ohio Railroad Company and the Nashville, Chattanooga & St. Louis Railway intersect in Union City in the heart of the town. The Mobile & Ohio Railroad runs north and south, and the Nashville, Chattanooga & St. Louis Railway runs northwest and southeast. They cross, so as to make an acute angle on the southeast and on the northwest, and an obtuse angle on the northeast and on the southwest. In the southwest angle is the present Union Passenger Depot, facing both railroads constructed by the two companies in 1888 or 1889. In the southeast angle is the Palace Hotel, a large brick structure. In the northeast angle there are several brick storehouses facing the right of way of the railroads. In the northwest angle are numerous switch tracks and industrial tracks, which occupy much of that space. West of the depot building is a large plot of ground belonging to the Nashville, Chattanooga & St. Louis Railway, part of which is used as a park and on a portion of which is a Y track.

As before stated, from east to west, the depot grounds are approximately in the center of the town. North of the depot and railroad crossing, it is five hundred and twenty-five feet to a thoroughfare crossing the tracks from the east to the west, and south of the depot and railroad crossing it is six hundred and sixty feet to such a thoroughfare. Between the two thoroughfares mentioned there are other streets, from the east and west coming to the railroad premises and there stopping. It is now sought by the city to connect one of these broken streets across the railroad property.

The proposed street is to be sixty feet wide. It will go through the park and over the tracks about the point at which they cross and the street will take a considerable part of the depot building. It is insisted by the complainants that it will be impossible, after the opening of the street, to construct a depot anywhere near the junction that will answer the purposes of the railroad companies and of the public. This, however, is denied. It is also insisted by the complainants that a street going over the railroads at the point at which they intersect will make an extremely hazardous crossing, dangerous to the public, and very inconvenient to the complainants. Complainants maintain that the new street will virtually destroy the value of their premises.

It is conceded by counsel for the complainants that, although property has been devoted to a public use, it may be, by the legislature, appropriated to another public use even though the latter use is inconsistent with the first.

The rule in Tennessee is that: ''Where property has been legally condemned or acquired by purchase for a public use, and has been or is about to be appropriated for such use, it cannot be taken for another public use, which will totally destroy or materially impair or interfere with the former use, unless the intention of' the legislature that it should be so taken has been manifested in express terms or by necessary implication. . . . Such implication never arises, except as a necessary condition to the beneficial enjoyment and efficient exercise of the power expressly granted.'' *Railroad Co.* v. *Cemetery Co.,* 116 Tenn., 400-411, 94 S. W., 69, 71.

This rule was again announced in *Railroad* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 4 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153, and is general. 10 R. C. L., 198; 15 Cyc., 614.

The city justifies the action it purposes to take by chapter 93 of the Private Acts of 1915. This act is as follows:

''Chapter No. 93.

''An act to amend chapter 142 of the Acts of 1903, entitled 'An act to incorporate the town of Union City, in the county of Obion, State of Tennessee, and to define the rights, powers and liabilities of the same,' and all acts amendatory thereof, so as to increase and enlarge the powers of eminent domain of the town of Union City and prescribe a method of proceeding in exercising the same.

''Section 1. Be it enacted by the general assembly of the State of Tennessee that the charter of the town

of Union City as contained in chapter 142, Acts of 1903 and all acts heretofore passed amendatory thereof be, and they are hereby amended as hereinafter provided, and so as to confer upon said town in its corporate capacity under the name of the 'Mayor and Aldermen of Union City,' the powers conferred by this act, in addition to those now possessed by it.

"Sec. 2. Be it further enacted, that the mayor and aldermen of Union City shall have specific authority and power to extend its streets, alleys and sidewalks over, through and across the tracks, side-tracks, switch yards, depot buildings and grounds of any railway corporation or other corporation that is now or may hereafter be owning or operating a railway through or within the boundaries of the town of Union City; and through, over and across the tracks, side tracks, switch yards, depot buildings and grounds, and other property of the lessees of such railway and other corporations, and of any other person, firm, or corporation that may be in possession of, using, or controlling all or any part of the rights of way and properties of said railway corporation or other corporation.

"Sec. 3. Be it further enacted, that for the purposes mentioned in the foregoing sections, the mayor and aldermen of Union City are hereby vested with the powers of eminent domain, and are hereby authorized and empowered to condemn and take the property, buildings, depot buildings, privileges, rights and easements, etc., of said railway corporations and other corporations, their lessees, and of any other person,

firm or corporation that may be in possession of, using, or controlling all or any part of the rights of way and properties of said railway corporations or other corporations in the manner, mode, and upon the terms provided in sections 1324 to 1348 inclusive, of the Code of Tennessee of 1858.

"Sec. 4. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

It is first contended by the complainants that this act is unconstitutional, and in violation of section 17 of article 2 of the Constitution, in that the body thereof is broader than the caption. A careful examination of the statute forces us to the conclusion that this argument is unsound. The point made is that there is nothing in the title' of the statute which indicates that the purpose of the act is to give the city permission to condemn property already devoted to a public use. The title, however, indicates that the act is one "to increase and enlarge the power of eminent domain of the town of Union City." Conferring the power to take property already devoted to a public use is clearly an enlargement of the power of eminent domain previously vested in the city and the title, in our judgment, is appropriate and the contents of the act germane.

The complainants, however, say that this statute is general in its terms and does not confer specific authority upon Union City to condemn the railroad property herein sought to be acquired.

137 Tenn.—32

We think chapter 93 of the Private Acts of 1915 is quite specific. It could scarcely be more so unless it set out by metes and bounds a description of the property which the municipality was authorized to condemn.

The statute enumerates certain physical properties of all the railroad companies within the boundaries of the town of Union City and authorizes the municipality to take such property for the purpose of extending the streets, alleys, and sidewalks of the town. This property, devoted to a prior public purpose, is particularly named, and power given in terms to appropriate it to another public purpose. A grant of the power to take a part is necessarily included in the grant of power to take it all.

The rule that property devoted to a public use cannot be taken for another public use without expressed legislative authority probably has for its foundation the old principle of the common law that the king was not bound by a statute unless named therein. Law was presumed to be made for the subject only, and the crown was not reached, except by express words or by necessary implication in any case affecting an existing prerogative or interest. *Ex parte Russell,* 19 Ves. Jr., 163; *Ex parte Postmaster General,* 10 Ch. D., 595; *In re Cuckfield Burial Board,* 19 Beav., 153. The same principle has been adopted in this country, and our courts usually hold that the sovereign power is not bound by general words in a statute. *United States* v. *Herron,* 20 Wall., 251, 2 L. Ed., 275; *Jones* v. *Tatham,* 20 Pa., 398; *Stoughton* v. *Baker,* 4 Mass., 522, 3 Am. Dec., 236; *People* v. *Rossiter,* 4 Cow. (N. Y.), 143.

In accord with the foregoing are numerous American decisions holding that municipalities or other corporations vested generally with the power of eminent domain cannot condemn State or public lands, unless endowed with specific statutory authority expressed or necessarily implied. See cases collected in note, 15 Ann. Cas., 488.

So it follows that, when public service corporations have acquired property for the public use, it is in a measure the property of the sovereign, and cannot be reached by proceedings under the general laws respecting eminent domain. It is presumed not to fall within the scope of such statutes. Its *status* can only be affected by specific legislation.

Thus it is a statute, to authorize the expropriation of property dedicated to a prior public use, must reflect a manifest purpose of the legislature. The legislative power, however, is ample and unquestioned.

We think the intention of the legislature was very clearly expressed in chapter 93 of the Private Acts of 1915. The existing limits of the streets, alleys, and sidewalks, within the boundaries of the town of Union City, were recognized and the propriety of an extension of said streets, alleys, and sidewalks was sanctioned. The legislature took notice of the fact that these extensions would involve the necessity of proceeding "over, through and across the tracks, side tracks, switchyards, depot buildings and grounds" of the railroad corporations within the city. To meet this situation, the third section of the act authorized the mayor and aldermen

of Union City, "for the purposes mentioned in the fore-going sections, . . . to condemn and take the prop-erty, buildings, depot buildings, privileges, right and easements," etc., "of said railway corporations."

What were the purposes of the foregoing sections? The extension of existing streets, alleys, and sidewalks in the town of Union City. The act thus unmistakably identified the very property to be taken, namely, that in the line of the authorized extensions. The language was more definite, indeed, than would be required, by way of indicating the particular property subject to condemnation. *In re New York,* 135 N. Y., 253, 31 N. E., 1043, 31 Am. St. Rep., 825; *Pittsburgh, Ft. W. & C. R. Co.* v. *Sanitary District of Chicago,* 218 Ill., 286, 75 N. E., 892, 2 L. R. A. (N. S.), 226.

We do not think the question of the public necessity for the extension of the present streets, alleys, and side-walks of Union City is before the court, or can be brought before the court. The legislature has settled that question by an unqualified grant of power to the city to make the extensions.

In *Railroad* v. *Memphis, supra,* this court said that the judicial department of the government was vested with the power to take, and the power to determine the character of the taking, and the justness of the compen-sation to be made, "but all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determina-tion of the courts. Selecting the property to be taken, as contradistinguished from similar property in the

same locality, determining its suitableness for the use to which it is proposed to put it, as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take.''

This case involved the entire terminals of the Southern Railway in Memphis, and was fully considered by the court, and many authorities reviewed, and we see no reason to depart from the conclusions therein reached.

It is further urged in behalf of the complainants that Union City is estopped from undertaking to extend the street through the railroad properties at this point by reason of the action of the city government in 1888 and 1889. At that time proof is introduced to show that the municipal authorities agreed with the two complainant companies that, if they would erect the union depot now used by them, no attempt would be made to open streets through the premises. It is said that on the faith of this agreement the companies erected the station which it is now sought to destroy at a cost of about $7,000, and have spent other money in beautifying the grounds, laying tracks, etc.

For this contention we are referred to *Portland* v. *Inman-Poulsen Lumber Co.,* 66 Or., 86, 133 Pac., 829, 46 L. R. A. (N. S.), 1211, Ann. Cas., 1915B, 400, and to the authorities collected in a note in Ann. Cas., 1915B, 406.

As will appear from the cases cited, the right to invoke an estoppel against a municipality in respect to the opening of streets is by no means well established.

However that may be, the cases referred to are not at all in point here. They involve efforts of various municipalities to open up streets by proceedings of one sort and another, or *quasi* criminal actions by municipalities against certain defendants for blocking or interfering with streets. None of the defendants therein were to be paid compensation for the damage threatened. The reasoning of all these cases fails when those seeking the estoppel are to be paid full compensation for the damage to be inflicted upon them. In other words, none of the cases relied on were proceedings in eminent domain.

A number of objections to evidence are brought to the attention of this court. We do not find it necessary, however, to pass on these matters. The evidence chiefly relates to the claim of estoppel and to the necessity of the proposed improvement by the municipality. The court declines to go into the latter question. As to the estoppel, the power of eminent domain is inalienable, and no legislature or municipal authority can bind itself or its successors, even by contract, not to exercise this power when public necessity and convenience require. 10 R. C. L., 12; *Railroad v. Memphis, supra.*

While the case presents some hard features affecting the rights of the complainant companies, nevertheless the power of the legislature and of the municipal authorities is full. Under the rules laid down by this court in *Railroad* v. *Memphis, supra,* the complainant companies may obtain complete compensation for all damages they sustain.

It results that the decree of the chancellor must be affirmed.