State Highway Department *et al. v.* Montgomery Mitchell's Heirs *et al.*

(*Knoxville.* September Term, 1919.)

1. **CONSTITUTIONAL LAW. Eminent domain. Statutes. Taking possession upon filing condemnation proceedings as due process of law.**
Acts 1919, chapter 149, section 9, empowering highway commission immediately upon filing of condemnation suit to take possession of the property designated, is not subject to the objection that it is a suspension of general law for the benefit of particular individuals inconsistent with the law of the land, and therefore in violation of Const. art. 11, section 8, article 1, section 8, and Const. U. S. Amend. 14. (*Post, pp.* 61-64.)

Acts cited and construed: Acts 1917, ch. 74; Acts 1919, ch. 149.

Constitutions cited and construed: Sec. 8, art. 11; Sec. 8, art. 1; Sec. 21, art. 1.

2. **CONSTITUTIONAL LAW. Eminent domain. Statutes. Condemnation proceedings for highway without cost bond.**
Acts 1917, chapter 74, section 5, authorizing condemnation suits for acquisition of right of way for highways to be prosecuted without cost bond, is not subject to objection that it is a suspension of general law, for the benefit of particular individuals, inconsistent with the law of the land, and therefore in violation of Constitution article 11, section 8, article 1, section 8, and Constitution U. S. Amend. 14. (*Post, pp.* 61-64.)

3. **EMINENT DOMAIN. Procedure in eminent domain proceeding.**
Since neither Acts 1917, chap. 74, sec. 5, nor Acts 1919, chap. 149, sec. 9, though conferring right of eminent domain, prescribe details of procedure to be followed by counties or highway commission in acquiring property for highway purposes, the acts will be held to have been passed "with reference to the established mode of procedure in such cases existing at the time," and the proper

State Highway Department v. Mitchell's Heirs.

procedure, therefore, is according to Thomp. Shan. Code, sec. 1844 et seq., except as modified by said section 5 and 9. (*Post, pp.* 64-66.)

Acts cited and construed: Acts 1917, ch. 74; Acts 1919, ch. 149, sec. 9.

Case cited and approved: Railroad v, Memphis, 126 Tenn., 267.

Code cited and construed: Secs. 1844, 1845-1859, 1861-1863, 1865 (T.-S.).

4. **STATUTES.** Construction as binding State.

Law is presumed to be made for the subject or citizen only, and the sovereign is not reached by a statute unless named therein, or unless by necessary implication. (*Post, p.* 66.)

Cases cited and approved: Railroad v. Mayor & Aldermen of Union City, 137 Tenn., 491; Mayor and Alderman of Morristown v. Hamblen County, 136 Tenn., 242.

Code cited and construed: Sec. 1844 (T.-S.).

5. **STATUTES.** Special laws may be passed affecting agencies of State.

Conceding that general laws governing condemnation (Thomp. Shan. Code, secs. 1845-1859, 1861-1865), would otherwise apply, such laws may be repealed or modified in their application to the highway commission and the several counties acting under Acts 1917, chap. 74, and Acts 1919, chap. 149, and these agencies may be authorized to proceed in a different manner, since special laws may be passed affecting agencies of the State. (*Post, pp.* 66, 67.)

Cases cited and approved: State v. Wilson, 80 Tenn., 246; Ballentine v. Pulaski, 83 Tenn., 633; Williams v. Nashville, 89 Tenn., 487; Redistricting Cases, 111 Tenn., 234; Todtenhausen v. Knox County, 132 Tenn., 169; Quinn v. Hester, 135 Tenn., 373; Fleming v. Memphis, 126 Tenn., 331; Malone v. Williams, 118 Tenn., 390; Memphis v. Fisher, 68 Tenn., 239.

6. **EMINENT DOMAIN.** Entry without payment or bond.

Where the general funds of a county of the State are subject to satisfaction of the landowner's claim, the legislature may with propriety permit entry upon the property designated without prepayment or bond. (*Post, pp.* 67-69.)

State Highway Department v. Mitchell's Heirs.

Case cited and approved: Henley v. State, 98 Tenn., 665.

Case cited and distinguished: Smeaton v. Martin, 57 Wis., 364.

7. **EMINENT DOMAIN.** Adequate provision for just compensation.

Acts 1917, chap. 74, sec. 5, and Acts 1919, chap. 149, sec. 9, in view of said section 5 authorizing judgment against county in condemnation suit to appropriate land for highway purposes, make adequate provision for compensation under Const. art. 1, sec. 21, since Thomp. Shan. Code, secs. 681-684, authorize imposition of tax to pay judgment against county, and give owner of the judgment right to compel levy of tax. (*Post, pp.* 69-72.)

Acts cited and construed: Acts 1917, ch. 74, sec. 5; Acts 1919, ch. 149.

Cases cited and approved: Simms v. Railroad, 59 Tenn., 621; Parker v. Railroad, 81 Tenn., 669; Saunders v. Railroad, 101 Tenn., 206; Tuttle v. Knox County, 89 Tenn., 157; Tennessee Central Railroad Co. v. Campbell, 109 Tenn., 640; Cunningham v. Terminal Co., 126 Tenn., 343; Railroad v. Memphis, 126 Tenn., 267; Anderson v. Turberville, 46 Tenn., 150.

Codes cited and construed: Secs. 681-684, 1844 (T.-S.).

8. **HIGHWAYS.** Highway commission may alter course of authorized road.

Though Priv. Acts 1917, ch. 25, and chapter 131, authorizing Washington county to issue bonds to provide a road system, required a particular road to pass a certain place and intersect with another road at about that place, and bonds were voted and the road constructed, *held* that the State highway commission had authority, under Acts 1919, ch. 149, sec. 9, to alter the course of the road at said place by a deviation of about one-third of a mile; deviation being thought necessary to make road conform to federal requirements. (*Post, pp.* 72-75.)

Case cited and approved: State ex rel. v. Cummings, 130 Tenn., 566.

Acts cited and construed: Acts 1917, chs. 25, 131; Acts 1919, ch. 149.

FROM WASHINGTON.

Appeal from the Circuit Court of Washington County.—Hon. J. STANLEY BARLOW, Special Judge.

SELLS & SIMMONDS and FRANK M. THOMPSON, Attorney-General, for appellant.

Cox & TAYLOR, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This is a condemnation suit brought by the State Highway Commission and Washington county to appropriate certain land in said county for highway purposes.

The proceedings were had under chapter 74 of the Acts of 1917 and chapter 149 of the Acts of 1919, providing for state highway commissioners, regulating the duties of the commissioners and the counties in the premises, providing for revenue, etc.

The trial judge was of opinion that the two statutes mentioned were unconstitutional in certain features, and, further, that the highway commission and Washington county were without authority to locate this particular highway as attempted for reasons hereafter appearing, and consequently without power to take the particular land herein sought. His honor accordingly dismissed the suit, and petitioners have appealed in error to this court.

Chapter 74 of the Acts of 1917 and chapter 149 of the Acts of 1919 are too elaborate to be set out in full here. The constitutional infirmities thought to exist are in section 5 of chapter 74 of the Acts of 1917 and section 9 of chapter 149 of the Acts of 1919.

Section 5 of chapter 74 of the Acts of 1917 is as follows:

"Be it further enacted, that the department shall have full power and authority, and it is hereby made its duty through its highway engineers or otherwise to designate a system of State Highways to designate the road or roads to be constructed, repaired or maintained by the use of the funds mentioned in this act, and to lay out and locate all such roads. The department is hereby further authorized in its own name or in the name of the county to condemn all necessary rights of way, gravel beds, stone or other material necessary or useful in building or repairing the roads contemplated by this act, and in so doing may bring and prosecute all necessary condemnation suits. The State Attorney General and district Attorney General in each case shall act as attorneys for the department without additional compensation. All judgments rendered and other expenses necessarily incurred in such condemnation proceedings shall be paid out of the general funds of the county, in which the expenses are incurred and standing to the credit of the trustee on the warrant or voucher of the county judge or chairman drawn under the direction of the secretary of the department.

"No cash bond shall be necessary in such suit. Injuction may be sought and obtained against all persons interfering in any way with the work of said department or of any of its assistants or employees engaged in locating, laying out, or constructing any of said roads.

"It shall be the duty of all the chancellors and trial judges in this State to grant such injuctions and make

all such other orders as will facilitate the work of the department in locating and constructing roads hereunder, and they shall promptly hear all cases in which the department may be interested."

Section 9 of chapter 149 of the Acts of 1919 is in these words:

"Be it further enacted, that whenever the said State Highway Commission finds it necessary or advisable it shall have the power to alter the course or grade or otherwise improve any road selected, adopted, or accepted for federal or state aid and take over and improve as a State highway. The counties wherein such roads lie shall have and are given the authority to acquire for the benefit of the State rights of way therefor, either by donations by owners of the land through which said highways shall run, or by agreement between such owners and the county, or by the exercise of the power of eminent domain which is hereby expressly conferred upon such counties. Provided, however, if the county authorities through which said road is designated do not act immediately upon request of the said State Highway Commission for the procurement and furnishing of said rights of way, that there is hereby expressly given to said State Highway Commission the right to condemn by eminent domain all rights of way for said roads, all bluffs, gravel pits, and any and all other road material found necessary or advisable to be used by said State Highway Commission. Provided, further, that the said highway commission is authorized and empowered immediately upon the filing of the petition for condemnation of said rights of way and road material to take possession of the said desigated

right of way, road material and other property sought to be condemned.''

The trial judge thought that the provisions above quoted, empowering the highway commission, immediately upon the filing of the condemnation suit, to take possession of the property designated was a suspension of general law, for the benefit of particular individuals, inconsistent with the law of the land, and therefore in violation of section 8, article 11, and section 8, artcle 1, of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States.

He entertained the same view as to the provision authorizing these suits to be prosecuted without a ''cash bond,'' which language he properly said was intended to mean ''cost bond,'' the word ''cash'' being obviously a misprint.

The trial court seemed likewise of opinion that the statutes authorized the application of property to a public use without adequate provision to insure ''just compensation being made therefor,'' and thus contravened section 21, art. 1 of the Constitution of Tennessee.

We will consider these constitutional objections in the order in which they have just been mentioned.

Neither of the acts before us undertake to prescribe the details of the procedure to be followed by the counties or highways commission in acquiring property for highway purposes. The right of eminent domain is conferred and under such circumstances the acts will be held to have been passed ''with reference to the established mode of procedure in such cases existing at the time.'' *Railroad* v. *Memphis,* 126 Tenn., 267, 290, 148 S. W., 662, 667 (41 L. R. A. [N. S.], 828, Ann. Cas.,

1913E, 153). Therefore proper procedure herein is according to section 1844 et seq., Thompson's Shannon's Code, the general statutes regulating the taking of private property for works of internal improvement, except as such general practice is sought to be modified by the above-quoted sections of the Acts of 1917 and 1919.

The question to be now decided is whether these changes attempted to be made in the general statutes in favor of the counties and highway commission are permissible under the Constitution.

Our condemnation statutes provide for the filing of a petition in the circuit court, notice to the owner, writ of inquiry, jury of view to lay off the land and assess damages, and that the land be decreed to petitioner "upon payment to defendants or to the clerk for their use, of the damages assessed with costs." Thompson's Shannon's Code, section 1845-1859.

Either party may appeal from the finding of the jury of view and have a trial anew in the usual way in the circuit court, and petitioner may enter and proceed with the work, pending appeal, upon giving a good bond. Thompson's Shannon's Code, section 1861-1863. Thompson's Shannon's Code, section 1865, is as follows:

"Damages to be Prepaid, or Bond on Appeal.—No person or company shall, however, enter upon such land for the purpose of actually occupying the right of way, until the damages assessed by the jury of inquest and the costs have been actually paid; or, if an appeal has been taken, until the bond has been given to abide by the final judgment as before provided."

5—142 Tenn.

Is it permissible, in view of the general laws on the subject, to authorize the highway commission, "immediately upon the filing of the petition for condemnation," to enter and take possession of the property designated? We think so for several reasons.

Law is presumed to be made for the subject or citizen only, and the sovereign is not reached by a statute unless therein named, or unless by necessary implication. *Railroad* v. *Mayor & Aldermen of Union City,* 137 Tenn., 491, 194 S. W., 527; *Mayor and Aldermen of Morristown* v. *Hamblen County,* 136 Tenn., 242, 188 S. W., 796.

The power of eminent domain may be exercised by the sovereign directly or it may be delegated. We think the statutes (Thompson's Shannon's Code, section 1844 et seq.) were intended primarily to regulate the taking of property by persons or corporations to whom the right of eminent domain had been delegated. However, it is doubtless true that in suits to condemn the sovereign should proceed in the same way, unless the legislature otherwise directs.

There can be no question but that in taking property under the Acts of 1917 and 1919 for highway purposes the highway commission and the county act merely as arms or agents of the State. Property so acquired is for a State purpose. Rights of way so obtained form links in the State's highway system, to be supervised by the State, and to be maintained with a tax levied by the State.

That is to say, the highway commission and the counties act as governmental agencies in the matter and not in any corporate or individual capacity. So if it be conceded that the general laws governing con-

demnation proceedings would otherwise apply, nevertheless such laws may be repealed or modified in their application to the highway commission, and the several counties, acting under authority of the Acts of 1917 and 1919. These agencies may be authorized to proceed in a different way to accomplish such a purpose; for nothing is better settled than that special laws may be passed affecting counties, municiaplities, school districts, and the like, as arms or agencies of the State. *State* v. *Wilson,* 80 Tenn. (12 Lea), 246; *Ballentine* v. *Pulaski,* 83 Tenn. (15 Lea), 633; *Williams* v. *Nashville,* 89 Tenn., 487, S. W., 364; *Redistricting Cases,* 111 Tenn., 234, 80 S. W., 750; *Todtenhausen* v. *Knox County,* 132 Tenn., 169, 177 S. W., 487; *Quinn* v. *Hester,* 135 Tenn., 373, 186 S. W., 459.

Cases like *Fleming* v. *Memphs,* 126 Tenn., 331, 148 S. W., 1057, 42 L. R. A. (N. S.), 493, Ann. Cas., 1913D, 1306; *Malone* v. *Williams,* 118 Tenn., 390, 103 S. W., 798, 121 Am. St. Rep., 1002, and *Memphis* v. *Fisher,* 68 Tenn. (9 Baxt.), 239, where certain statutes affecting particular municipalities were held invalid, were cases in which the municipality was affected in its corporate rather than governmental character, and these statutes, moreover, made unlawful distinctions as between municipality and municipality. We think such authorities are not in point here.

In addition to the foregoing, and laying aside other considerations which incline us to sustain this so-called special legislation, we think it may very well be upheld as a legitimate exercise of legislative classification.

In the case of a private corporation endowed with the right of eminent domain, no one on the outside can

be sure of its true financial condition. The law wisely requires the landowner to be paid or secured for his property taken before entry is permitted. Where the general funds of a county of the State, however, are subjected to the satisfaction of the landowner's claim, he is perfectly certain to be paid, and the legislature may with propriety permit an entry without prepayment or bond. We think such a discrimination is reasonable, and may be rested on a sound basis.

In 15 Cyclopedia of Law, p. 775, it is said:

"In the absence of any constitutional requirement it is not necessary for a State or municipal subdivision of the State to pay for private property taken for a public use in advance of the taking, if provision is made for its payment and a proper tribunal constituted so that the landowner may make his claim and receive damages, and the same is the case where the Constitution, although requiring prepayment, excepts from its operation a State or municipal corporation, or where the Constitution or statutes require compensation to be first paid or secured. It is sufficient that an adequate and safe fund is provided from which payment is to be made, as, for instance, making the amount payable a charge upon the public treasury either of the State or some municipal subdivision thereof, which is considered equivalent to actual compensation. As was said by an eminent text-writer, the property of the municipality or of the State is a fund to which the landowner can resort without risk of loss."

"There is a broad distinction between the taking of private property for public use by a town or municipal corporation and the taking of it by a private

corporation, the responsibility of which may be very uncertain. Where the property is taken for public use by a town or municipal corporation which is made liable to the owner for any damages sustained by reason thereof, the taxable property of such town or municipality constitutes a pledge or fund to which such owner may resort for payment in the manner so prescribed by the statute with absolute safety, and hence we must hold that the providing of such a method of enforcing payment in such a case, and out of such a pledge or fund, is the making of just compensation for the property taken within the meaning of the Constitution. *Smeaton* v. *Martin,* 57 Wis., 364, 15 N. W., 403.''

As to the exemption from a cost bond, the whole subject of costs received an elaborate consideration in *Henley* v. *State,* 98 Tenn., 665, 41 S. W., 352, 1104, 39 L. R. A., 126, to which we could add nothing. Neither the State nor a county when acting as an arm or agency of the State is liable for costs in any case, unless the lawmaking power by statute has made them so. "As to what costs shall be allowed against the State and county is a matter which addresses itself solely to the wisdom and discretion of the General Assembly." *Henley* v. *State,* supra.

The remaining constitutional question is whether these statutes make adequate provision for compensation to the landowner for the taking of his property.

Actual prepayment is not required by section 21 of article 1 of the Constitution. It is sufficient if the statute which authorizes the taking makes due provision for compensation and a suitable remedy is

open to the owner to have his damage assessed and to realize compensation for the same. *Simms* v. *Railroad,* 59 Tenn. (12 Heisk.), 621; *Parker* v. *Railroad,* 81 Tenn. (13 Lea), 669; *Saunders* v. *Railroad,* 101 Tenn., 206, 47 S. W., 155.

As before indicated, proceedings herein will be according to the general condemnation laws, except as they are modified by the Acts of 1917 and 1919. Compensation will be assessed and a judgment against the county then obtained, for such a judgment is plainly authorized by section 5 of chapter 74 of the Acts of 1917. The same section enacts that: All judgments rendered and other expenses necessarily incurred in such comdemnation proceedings shall be paid out of the general funds of the county, in which the expenses are incurred and standing to the credit of the trustee, on the warrant or voucher of the county judge or chairman drawn under the direction of the secretary of the department.''

We think this sufficiently secures to the landowner payment of his compensation. The authorities uniformly hold such a provision adequate. Without undertaking to review the cases, their result is well summarized thus:

''It is sufficient if the payment is made a charge on the public treasury of the government, general or local, which exercises the power, or on the fund raised by it by general taxation.'' 15 Cyc., 645.

And again: ''When the taking is made by the State or a municipal corporation, no special security is required, since the public faith is pledged, and in the case of a municipal corporation, the entire taxable

property within its jurisdiction constitutes an adequate fund to which the owner may without risk of loss resort to compel payment." 10 R. C. L., p. 126.

If the general fund of any county should prove insufficient, the landowner, having a judgment against the county, may resort to sections 681-684 of Thompson's Shannon's Code, which direct the county court to impose a tax to pay any judgment against such county and which award to the person owning the judgment the right to a mandamus to compel the levy of a sufficient tax for his satisfaction. The county judge or chairman can, of course, be compelled to perform his duty in this matter by mandamus.

*Tuttle* v. *Knox County,* 89 Tenn., 157, 14 S. W., 486, is not in point. The act there under consideration was held invalid because, as said in the opinion, it nowhere provided for payment of damages to the landowner. "It leaves to speculation who is to be responsible, the public or the individuals who asked for the road; and there is no authority to any court to render a judgment."

The observations of this court in *Tennessee Central Railroad Co.* v. *Campbell,* 109 Tenn., 640, 75 S. W., 1012, repeated in *Cunnnigham* v. *Terminal Co.,* 126 Tenn., 343, 149 S. W., 103, Ann. Cas., 1913E, 1058, referred to by the defendants, were made in respect to proceedings under Thompson's Shannon's Code, section 1844 et seq. In neither case was there any question of the right of the legislature to prescribe a different method of procedure in condemnation suits. Both cases, moreover, presented efforts of private corporations to whom such power had been delegated, to exercise the

right of eminent domain. The particular reasoning of the opinion in *T. C. R. Co.* v. *Campbell,* supra, here relied on, is without point as applied to a taking by the State for highway purposes. The sovereign's power in the premises and the public nature of such a purpose are things that have been beyond question for several centuries, and a provision in the statutes before us for litigating such matters as these would have been incongruous.

The conclusions here expressed are well supported by *Railroad* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153, and *Anderson* v. *Turberville,* 46 Tenn. (6 Cold.), 150, and other cases.

We are therefore of opinion that the constitutional objections to chapter 74 of the Acts of 1917 and chapter 149 of the Acts of 1919, must be overruled.

The remaining question in the case arises in this way: The particular land is sought to be taken by the highway commission and Washington county in this case to straighten, and reduce the grade of, a road known as the Memphis to Bristol Highway. This highway had been laid out and graded through Washington county by the good roads commission of that county. The highway department proposed to take over this road heretofore laid out and graded, as it was authorized to do, and to alter it in the manner just mentioned. This alteration was thought necessary by the highway commission to make the road conform to federal requirements, and to obtain federal aid. The alteration amounted to a deviation in a short strip of the road

of about one-third of a mile at a place known as Broylesville.

By chapter 25 of the Private Acts of 1917 and chapter 131 of the Private Acts of 1917, Washington county was authorized to issue $750,000 of bonds to provide a road system for that county upon affirmative vote of the people. The roads to be built were particularly described in the statutes mentioned, with reference both to their termini and their routes. The statute required the road known as the Memphis and Bristol Highway at this point to pass Broylesville, and the statute also provided for another road to intersect said highway at about this point, and the deviation here attempted will cause the highway to miss Broylesville, and the said point of intersection with the other road, about one-fourth to one-third of a mile.

It is insisted for the defendants that, inasmuch as the statute fixed the route of the Memphis to Bristol Highway through Broylesville and this point of intersection, and upon the faith of the statute Washington county voted bonds, the route so designated cannot now be changed, at least by anything less than an act of the legislature. The circuit court so held.

We think that *State ex rel.* v. *Cummings,* 130 Tenn., 566, 172 S. W., 290, L. R. A., 1915D, 274, is decisive of this contention. In that case Hamilton county was authorized to issue bonds upon an affirmative vote of the people for building a road from a point in the old fourth district of said county to a point in old seventeenth district of said county across Lookout Mountain above the line of the Nashville, Chattanooga & St. Louis Railway. The bonds were voted and sold,

but for some reason the road was not built, and the proceeds of the bonds was held by the county. By a subsequent act of the legislature the proceeds of said bond issue was diverted to other roads in said county.

The validity of the latter act was challenged, but it was upheld by this court and by us declared that, inasmuch as the county was but an arm or agency of the State, the legislature had full authority in the matter.

So manifestly the legislature might by a particular act have directed that the route of the Memphis and Bristol Highway be changed, and that the funds raised by the bond issue be applied to the construction of the road as changed. No such special act has been passed, but by chapter 149 of the Acts of 1919, section 9, it was provided:

"That whenever the said State Highway commission finds it necessary or advisable it shall have the power to alter the course or grade or otherwise improve any road selected, adopted, or accepted for federal or State aid and take over and improve as a State highway."

This seems to give the highway commission abundant authority "to alter the course" of this road as they have undertaken to do.

As shown in *State ex rel.* v. *Cummings,* supra, the State has full power over highways within its bounds, and may take them in charge at will.

We perceive no reason to prevent the State from acting in this matter through its highway commission. The State might either have changed the route by special act, or it may authorize the commission to

State Highway Department v. Mitchell's Heirs.

change the route.  The sovereign ordinarily acts in such matters through agents exercising delegated authority, and it appears from the expression of the court in *State ex rel.* v. *Cummings,* supra, that this has been supposed to be the wiser method.

This result works no injustice to Washington county, nor does any violence to the sentiment of that county as expressed in the election for bonds authorized by the Private Acts of 1917.  In those very acts it was declared to be the duty of the good roads commission of Washington county to complete their system in such way as to entitle Washington county to receive its portion of State and federal aid.

A hardship may be worked upon these defendants and a few others, but their interests must yield to the public good.

It results that the judgment below will be reversed, and this case remanded for further proceedings.