WILLIAMSON COUNTY *v.* FRANKLIN & SPRING HILL
TURNPIKE C*.

(*Nashville.* December Term, 1920.)

1. **EMINENT DOMAIN.** Privileges secured by corporate charter may
be condemned; "property."

Although a corporate charter is a contract and protected by the
federal Constitution, yet the rights and privileges secured by it
are property, and, like all other property, are subject to the emi-
nent domain power of the State. (*Post, p.* 635.)

Cases cited and approved: West River Bridge Co. v. Dix, 6 How.,
507; Red River Bridge Co. v. Clarksville, 33 Tenn., 176.

2. **STATUTES.** Provision for revenue for use in road building, etc.,
held included in title of act.

As the caption of Pub. Acts 1917, chapter 74, after providing revenue
for use in road building in Tennessee in connection with the
Secretary of Agriculture and in conformity to Act Cong. July 11,
1916 (U. S. Comp. St. sections 7477a-7477i), expressly declares that
it was to provide means and instrumentalities for carrying out
the work of road building as contemplated by the act of Congress,
such act-is not open to attack on the ground that it violates
Constitution, article 2, section 17, as embracing a subject not ex-
pressed in its title ,on the theory that the act is by its caption a
revenue act, while purporting in its body to confer powers of
eminent domain; the general purpose of the act being to provide
means to co-operate with the federal government in road building.
(*Post, pp.* 635, 636.)

Acts cited and construed: Acts 1917, ch. 74.

Case cited and approved: Coal Iron & Railroad Co. v. Flume &

Transportation Co., 128 Tenn., 277.

Williamson Co. v. Turnpike Co.

Constitution cited and construed: Art.. 2, sec. 17.

Statutes cited and construed: Secs. 7477a-7477i (U. S.).

3. **HIGHWAYS.** *Act providing means to co-operate with federal government in highway building held not repealed.*

Pub. Acts 1917, chapter 74,, providing for revenue and means to co-operate with the federal government in highway building, was not repealed by Pub. Acts 1919, chapter 149, the earlier act laying an *ad valorem* tax to raise funds for highway building, while the latter lays a privilege or license tax on automobiles, and further declares, in section 25, that nothing shall be construed to conflict with Pub. Acts 1917, chapter 74. (*Post, pp.* 636-638.)

Acts cited and construed: Acts 1917, ch. 74; Acts 1919, ch. 149.

Case cited and approved: State Highway Department v. Mitchell's Heirs, 142 Tenn., 58; Moreau P. Estes v. Romans Hailty, Clerk, Davidson Law, 228 S. W., ——.

4. **EMINENT DOMAIN.** *Power of county must be determined from consideration of acts in pari materia.*

As the Federal Aid Act (Pub. Acts 1917, chapter 74), providing that the state highway department in its own name or in the name of county may condemn all necessary rights of way, was supplemented by Pub. Acts 1917, chapter 114, passed in the same session, declaring that the county court might condemn any turnpikes, the two acts, which are *in pari materia*, must be construed together in determining the power of the county to condemn a turnpike for a link in the State and national highway. (*Post, pp.* 638-640.)

Cases cited and approved: Railroad v. Memphis, 126 Tenn.,, 267; State Highway Dept. v. Mitchell's Heirs, 142 Tenn., 58.

Code cited and construed: Sec. 1844 (T.-S.)..

5. **EMINENT DOMAIN.** *If provision is made for compensation impartially assessed, constitutional guaranty is met.*

If provision is made by condemnation laws whereby a party can obtain compensation, and an impartial tribunal is provided for assessing, the provisions of the Constitution forbidding the taking

of property without compensation are sufficiently met. (*Post*, *pp.* 640-644.)

6. EMINENT DOMAIN. Statute held to make sufficient provision for condemnation of franchise of turnpike company.

Pub. Acts 1917, chapter 74, known as the Federal Aid Act, and the supplemental act (Pub. Acts 1917, chapter 114), providing for condemnation of turnpikes, sufficiently provide for the condemnation of the franchises and incorporeal rights of turnpike companies, although the procedure is regulated by Thompson-Shannon Code, section 1844, et seq., which make no special provision for awarding of damages for incorporeal property, for an impartial tribunal is provided for assessing the compensation, though the elements of compensation are specified; the determination of the value of such franchises, etc., being questions for the court disposing of the condemnation case. (*Post*, *pp.* 640-644.)

Acts cited and construed: Acts 1917, ch. 114.

Case cited and approved: Railroad v. Memphis, 126 Tenn., 267.

7. EMINENT DOMAIN. Property dedicated to a public use cannot be taken unless power is conferred expressly or by necessary implication.

Where property has been dedicated to a public use, it cannot be taken for another and inconsistent use unless the power so to take is conferred expressly or by necessary implication. (*Post*, *p.* 644.)

8. EMINENT DOMAIN. Property of turnpike company held subject to condemnation for state and national highway.

Although property dedicated to a public use cannot be taken for another and inconsistent use unless the power is conferred expressly or by necessary implication, and notwithstanding a turnpike company charging tolls as a *quasi*-public corporation, the physical property as well as the franchises of such turnpike company may be condemned under Pub. Acts 1917, chapters 74 and 114, the first providing means for acceptance of federal aid for highways, and the latter expressly authorizing the condemnation of turnpikes. (*Post*, *p.* 644.)

Williamson Co. v. Turnpike Co.

Case cited and approved: Railroad v. Mayor & Aldermen of Union City, 137 Tenn., 491.

9. EMINENT DOMAIN. Sufficient provision held made for compensation for property of turnpike company.

The Federal Aid Act, Pub. Acts 1917, chapter 74, providing, in section 5, that all judgments and other expenses incurred in condemnation proceedings shall be paid out of the general fund of the county, and Pub. Acts 1919, chapter 149,,. section 9, pledging the general funds of the county as compensation in condemnation suits for highway purposes, make adequate provision for compensation under Constitution, article 1, section 21, and where the property of a turnpike was sought to be condemned, the project cannot be defeated on the ground that no provision was made for ascertaining and paying the compensation provided for before entry on the property. (*Post, pp.* 645, 646.)

Cases cited and approved: State Highway Dept. v. Mitchell's Heirs, 142 Tenn., 58; Railroad v. Memphis, 126 Tenn., 267; Monongahela Nav. Co. v. U. S., 148 U. S. 312.

Constitution cited and construed: Art. 1, sec. 21.

10. EMINENT DOMAIN. Turnpike company cannot defeat condemnation of its property because it was not specifically named in statute.

As Pub. Acts 1917, chapter 74, supplemented by chapter 114, authorizes the condemnation of turnpikes as links in the State and national highway, a turnpike company whose property a county sought to condemn cannot defeat condemnation on the ground that it was not specifically and *eo nomine* referred to in the acts, for, as the acts provide for condemnation of property theretofore devoted to a public use, they did not have to specify such property, but might delegate to a public agency as a county the right to select. (*Post, pp.* 646, 647.)

11. EMINENT DOMAIN. Petition held to show necessity for taking turnpike as link in a state and national highway.

As Pub. Acts 1917, chapter 74, supplemented by chapter 114, authorized county courts, etc., to condemn turnpikes for State and national highway, petition in a suit by a county that the State highway department had selected a turnpike as a link in a State and national highway *held* sufficient to show the necessity for condemnation. (*Post, pp.* 647, 648.)

Case cited and distinguished: Bragg v. Weaver, 251 U. S., 57.

12. **EMINENT DOMAIN.** Determination of necessity of taking is not for the courts.

In the absence of a clear and palpable abuse of power, the question of the propriety of condemnation of property for public purpose is not for the courts, but for the legislature. (*Post, pp.* 648, 649.)

---

FROM WILLIAMSON.

---

Appeal from the Circuit Court of Williamson County.— HON. J. C. HOBBS, Judge.

J. C. EGGLESTON, W. J. SMITH, C. P. HATCHER and F. M. THOMPSON, Attorney-General, for appellant.

R. H. CROCKETT, F. P. HENDERSON and W. B. LAMB, for appellee.

MR. E. J. SMITH, Special Justice, delivered the opinion of the Court.

On the 12th day of August, 1919, Williamson county filed a petition in the circuit court of that county seeking to condemn and appropriate the Franklin & Spring Hill Turnpike Company, together with its easements, right of

way, roadbed privileges, franchises, and property, to the end that the same from Franklin, Tenn., to the Maury county line might form and constitute a part of a State and national highway, to be known as the "Jackson Highway." The petition alleged that the defendant below owned a turnpike in Williamson county, Tenn., from the corporate limits of the town of Franklin, extending in a southerly direction to the county line between Williamson county and Maury county, and that it had located and erected on its said road three tollgates at which tolls were exacted and collected from the traveling public passing over said road and through said tollgates.

The petition further alleged that the State Highway Department of the State of Tennessee in its official capacity had selected and adopted the right of way and roadbed throughout its entire length and width to form and constitute a part of a State highway now being constructed through the State of Tennessee by said State Highway Department with the aid of the federal government and the counties through which said highway runs.

The defendant below demurred to the petition and assigned eleven grounds of demurrer. The demurrer was first overruled by the circuit judge, but on a reconsideration of his former action he sustained the same, particularly the second ground thereof, and held as follows:

"There is no valid and effective legislation and no law authorizing the taking of the franchises, rights, privileges, and incorporeal properties of private corporations for public uses, because no provisions are made in any of the stat-

utes on this subject for compensation and for ascertaining the value of this class of property, and, in the absence of these provisions, such taking is in contravention of the provisions of the Constitution of the State of Tennessee and the United States with reference to the taking of private property for public uses."

As above stated, while eleven grounds were assigned in the demurrer, the critical and determinative question herein involved is presented in the above-quoted excerpt of the judgment of the court below. From the action of the court in so sustaining the demurrer of the turnpike company, Williamson county has appealed to this court and has here assigned errors.

It is first insisted that, as the charter of the turnpike company was granted prior to the Constitution of 1870, it constitutes a contract, the obligation of which would be impaired by the taking of its property for the purposes specified in the petition. This contention is wholly without merit, as it is everywhere settled that, although a corporate charter is a contract and protected by the Constitution of the United States, yet the rights and privileges secured by it are property, and, like all other property are subject to the eminent domain power of the State. *West River Bridge Co.* v. *Dix*, 6 How., 507, 12 L. Ed., 535; *Red River Bridge Co.* v. *Clarksville*, 1 Sneed, 176, 60 Am. Dec., 143.

The turnpike company next contends that chapter 74, Acts of 1917, violates article 2, section 17, of the Constitution of Tennessee, which provides that—"No bill shall be-

come a law which embraces more than one subject, that subject to be expressed in the title."

This insistence is to the effect that chapter 74, Acts of 1917, is by its caption a revenue act, while it purports in its body to confer the power of eminent domain.

Counsel for the turnpike company seemingly overlooked the fact that the caption of this act, after providing revenue for use in road building in Tennessee by the State Highway Department, in conjunction with the Secretary of Agriculture of the United States and in conformity to an act of Congress approved July 11, 1916 (U. S. Comp. St., sections 7477a-7477i), expressly provides:

"And to provide the means and instrumentalities for laying out and carrying on the work of road building in this State, as contemplated by said federal statute."

In *Coal, Iron & Railroad Co.* v. *Flume & Transportation Co.*, 128 Tenn., 277, 287-290, 160 S. W., 522, it was held that a statute entitled "An act to provide for the organization of corporations" had a title sufficiently broad to embrace the grant of the power of eminent domain.

Inasmuch as the purpose of chapter 74 of the Acts of 1917 was to provide means to co-operate with the federal government in road building, we do not think it can be seriously insisted that the conference in the body of the act of the power of eminent domain on the State Highway Department is not germane to the caption of the act and does not fall fairly within the purview thereof.

The turnpike company, moreover, insists that, conceding that chapter 74 of the Acts of 1917 is a valid act, what-

ever purported powers of eminent domain are therein con-
ferred are unavailing in the present suit, because this act
has been repealed by chapter 149 of the Acts of 1919    In
answer to this contention, it may be observed that the two
acts were treated as being in existence by the opinion of
this court in the case of *State Highway Department* v. *Mit-
chell's Heirs*, 142 Tenn., 58, 216 S. W. 336, although the
opinion in that case does not reveal that any alleged re-
pugnancy between the two acts was asserted.    Moreover,
section 25 of chapter 149 of the Acts of 1919 expressly
provides:

"That nothing in this act shall be construed to conflict
with the act known as 'Federal Aid Act,' and chapter 74
of the Public Acts of 1917, providing for the co-operation
with the federal government in the construction of roads
and bridges."

It is, however, insisted that, despite this legislative dec-
laration, chapter 74 of the Acts of 1917 is impliedly re-
pealed by chapter 149, Acts of 1919, in that both cover the
same subject-matter, and, as the latter act embraces a com-
plete scheme of legislation, it by implication repeals the
former act.

This court at its present term, in the case of *Moreau P.
Estes* v. *Romans Hailey, Clerk, Davidson Law*, 228 S. W.
——, has taken a contrary view and held the two acts
were not inconsistent or repugnant, and that both were in
full force and effect.    A re-examination of this question
has convinced us of the correctness of this view.

Chapter 74 of the Acts of 1917 is one laying an *ad valorem* tax for the purpose of enabling the State of Tennessee to avail itself of the privileges of the act of Congress of July 11, 1916, while chapter 149 of the Acts of 1919 lays a privilege tax or license on automobiles for the purpose of building good roads in the State. A cursory examination of the two acts will reveal that they did not have the same purpose and object in view, and, as no irreconcilable conflict or repugnancy exists between them, it cannot be said that the latter by implication repealed the former.

Having concluded that the property of the defendant company is subject to the exercise of the right of eminent domain, and that chapter 74 of the Acts of 1917 is not by implication repealed by chapter 149 of the Acts of 1919, the next inquiry is as to the scope of the power of eminent domain conferred by either of these acts, or by any other act *in pari materia,* so far as authority to condemn the property of the turnpike company is concerned.

For the turnpike company it is insisted that, under section 5 of chapter 74, Acts of 1917, no method or manner is prescribed for ascertaining the value of corporate franchises and incorporeal properties, but that the State Highway Department in its own name or in the name of the county is only authorized to condemn all necessary rights of way, gravel beds, stone, or other material necessary or useful in building or repairing the roads contemplated by said act. Differently stated, the turnpike company insists that no provision is made in chapter 74, Acts of 1917, for condemning the franchises, incorporeal hereditaments,

and other incorporeal properties of the defendant in error. This act became a law on April 3, 1917. At the same session of the Legislature chapter 114, Acts of 1917, was passed, which under a suitable caption expressly provided:

"And the county court of any county in the State of Tennessee may take any turnpike or turnpikes in said county, whether owned or operated by individuals or corporations."

By section 2 of this act it is provided: "It being the purpose of this act to declare the superior right of counties of this State to take public roads and turnpikes for their use after paying reasonable compensation therefor, the same to be ascertained as provided by law."

This latter act became effective April 5, 1917.

It is worthy of observation that the Federal State Aid Road Act (39 Statutes at Large, p. 355 [U. S. Comp. St. section 7477a]), as an essential condition of extending federal aid to the various states in road building, expressly provided:

"That all roads constructed under the provisions of this act shall be free from tolls of all kinds."

It is very probable that the legislature of Tennessee, conceiving that the language used in section 5 of chapter 74, Acts of 1917, would not extend to and embrace a turnpike or toll company, and that in the event the federal authorities selected such a company as a link in a national highway, the State would be precluded from receiving federal aid for such a highway, determined to pass chapter

114 of the Acts of 1917 so as to obviate and remove any such possible obstacle to road construction or development under the federal act. Whatever motives may have prompted the legislature of Tennessee in passing this last-named act it is not our province to inquire, but it is our duty to construe the act as written. The conclusion, however, is inescapable that chapter 114, Acts of 1917, must be construed as being *in pari materia* with chapter 74, Acts of 1917, which we have heretofore held was not impliedly repealed by chapter 149, Acts of 1919, and therefore the extent of the power of eminent domain conferred on the county must be determined from a consideration of these two acts.

It is conceded by the turnpike company that this power of eminent domain must be exercised with reference to the established mode of procedure in such cases existing at the time; that is to say, under section 1844, et seq., Thompson's Shannon's Code. This concession is compelled by previous cases decided by this court, notably *Railroad* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas:, 1913E, 153, and *State Highway Department* v. *Mitchell's Heirs,* 142 Tenn., 58, 216 S. W. 336.

The turnpike company, however, insists that chapter 114, Acts of 1917, enables the county only to condemn a turnpike, and does not provide for the condemnation of the franchises or other incorporeal properties of such a company. We are of the opinion that in view of the reasons which occasioned the enactment of chapter 114 of the Acts

of 1917, as well as in consideration of its phraseology, such a contention is extremely attenuated.

For years it has been a matter of common knowledge that a turnpike was a *quasi*-public corporation endowed with franchises bestowed by the State, such as the right to take tolls from the traveling public, and, of course, these franchises were as much elements of property as was the easement which the turnpike had in the land. When, therefore, the General Assembly by the passage of chapter 114, Acts of 1917, provided for the condemnation by counties of turnpikes, it inevitably meant that all property belonging to the turnpike, including its franchises and other property rights, should be as much subject to condemnation as the physical easement owned by such a company. The turnpike company, however, insists that as the mode of procedure for condemning turnpikes provides that compensation shall be paid in such condemnation suits, "as provided by law," that there is no law making provision for such compensation, and that section 1844 et seq., Thompson's Shannon's Code, provides only for the payment of damages for the compensation of real estate, and that consequently no provision is made for paying compensation for the condemnation of franchises or other incorporeal property.

While it is true that, as the statutes have not otherwise provided, reference must be made to section 1844 et seq., Thompson's Shannon's Code, for the mode of procedure to be used and employed in condemning turnpikes by counties, we do not think it follows that, because these sections

of the Code provide for payment of damages for real estate, the scope of chapter 114, Acts of 1917, must be accordingly limited.

It has been heretofore stated that the word "turnpike," as used in chapter 114, Acts of 1917, included all the property, tangible and intangible, attaching to such turnpikes, and that, in the absence of special provision being made to the contrary, section 1844 et seq., Thompson's Shannon's Code, would perforce have to be resorted to for ascertaining and determining the mode of procedure by which such compensation could be guaranteed and secured.

The turnpike company seemingly insists that, because chapter 114, Acts of 1917, does not specifically state the elements of value entering into the legal concept of the word "turnpike," and does not expressly provide compensation for each of such items, it is unconstitutional and void, or at least nothing more is provided for than the value of the real estate of a turnpike under section 1844 et seq., Thompson's Shannon's Code. For the reasons above stated, we are unable to concur in this view, and are of the opinion that chapter 114, Acts of 1917, is to be read in conjunction with section 1844 et seq. of the Code only in so far as the mode of procedure therein pointed out is to be followed in suits seeking to condemn turnpikes.

It is established law that, if provision is made by which a party can obtain compensation, and an impartial tribunal is provided for assessing it, the requirements of the Constitution are met. Cooley's Constitutional Limitations, p. 692.

143 Tenn.—41

In *Railroad* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153, following a long line of precedents, it was held that whether the taking is for a public use, and whether the statute authorizing the taking for such a use provides a sufficient and adequate procedure for the ascertainment of the fair value of the property to be taken, and payment in cash or sufficient security, are judicial questions confided to the courts; but all other incidents of the taking are political questions for the determination of the sovereign, and not judicial questions for the determination of the courts. It was not essential, therefore, that in providing for the condemnation of turnpikes by counties the legislature should have prescribed each element of property, corporeal and incorporeal, entering into and constituting the property of a turnpike. If compensation is provided for, and a tribunal is erected by resort to which compensation can be secured, the constitutional requirement, so far as the legislature is concerned in exercising the right of eminent domain, is satisfied, but what such compensation shall be and what elements of property shall be taken into consideration in fixing compensation are essentially judicial questions. We understand all of the authorities so to hold. It therefore follows that, construing chapter 74, Acts of 1917, and chapter 114, Acts of 1917, as being *in pari materia,* power and authority were conferred on Williamson county to exercise the right of eminent domain under section 5 of chapter 74, Acts of 1917, and that the

determination of what value the franchises and other in-
corporeal properties, if any, of the turnpike company are
will be questions to be determined by the court trying the
case.

The turnpike company, however, insists that, even if
these acts confer the right of eminent domain on the vari-
ous counties of the State, nevertheless its property is not
subject to condemnation, and in support of this contention
it cites the familiar principle of law that, where property
has been dedicated to a public use, it cannot be taken for
another and inconsistent use, unless the power so to take
it is conferred expressly or by necessary implication.

The legal principle involved is elementary and must be
conceded. *Railroad* v. *Mayor and Aldermen of Union City,*
137 Tenn., 491, 194 S. W., 512; 2 Nichols on Eminent
Domain, section 361, p. 1001, and cases there cited.

Having held that chapter 114, Acts of 1917, authorizes
counties to condemn turnpikes as *quasi*-public corpora-
tions, it inevitably results that the above-cited principle
of law cannot stand in the way of the county's assertion
of its authority in the case at bar. We are therefore of
the opinion that under the various acts of Tennessee above
referred to, Williamson county, acting, as the petition
shows it was, at the direction of the State Highway De-
partment, in instituting this condemnation proceeding,
was authorized to condemn all of the easements, roadbed,
franchises, and other properties of the Franklin & Spring
Hill Turnpike Company.

The turnpike company makes the insistence that no provision is made for ascertaining and paying to it the compensation to which it is entitled for the taking of its properties under the exercise of the right of eminent domain.

Having held that the acts heretofore considered authorize the condemnation of all of its properties, it follows that under section 5, chapter 74, Acts of 1917, proper provision is made for the payment of compensation incident to such condemnation. That section in part provides as follows:

"All judgments rendered and other expenses necessarily incurred in such condemnation proceedings shall be paid out of the general funds of the county, in which the expenses are incurred and standing to the credit of the trustee, on the warrant or voucher of the county judge or chairman drawn under the direction of the secretary of the department."

It has been heretofore held by this court in *State Highway Department* v. *Mitchell's Heirs,* 142 Tenn., 58, 216 S. W., 336, that, where the general funds of the county of a state are subject to satisfaction of the landowner's claim, the legislature may with propriety permit entry upon the property designated without prepayment or bond, and that section 5, chapter 74, Acts of 1917, as well as section 9, chapter 149, Acts of 1919, pledging the general funds of the county as compensation in condemnation suits for highway purposes, make adequate provision for compensation under Constitution, article 1, section 21.

As above stated, whatever constituent elements of property, as franchises or other incorporeal property, may en-

ter into the value of the defendant turnpike company, these must be compensated for, and indeed it is agreed that they will be.

The conclusion reached by this court is that an act providing for the condemnation of a turnpike as such does not, in order to be constitutional and valid, have to prescribe in detail each element of property entering into the value of a turnpike as a going concern, but in the absence of such a declaration by the legislature it is the imperative duty of the court to see that such compensation is made for every element of value which the property sought to be condemned may possess. *Railroad* v. *Memphis*, 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153; *Monongahela Nav. Co.* v. *U. S.*, 148 U. S., 312, 13 Sup. Ct., 622, 37 L. Ed. 463.

The fallacy in the argument of counsel for defendant in error, in our opinion, consists in assuming that, when the legislature provides for the condemnation of a *quasi*-public corporation, as a turnpike, it must specify in the act of condemnation every element of value constituting the property of such corporation, and for its failure so to do the act is unconstitutional and void. This, we are satisfied, under the authorities, is a mistaken view, and no case has been cited or found by us which supports it.

Again, the turnpike company contends that its property cannot be condemned under any of the acts above referred to, because it was not specifically and *eo nomine* referred to in such acts, and seemingly reliance is placed on *Rail-*

*road* v. *Memphis* and *Railroad* v. *Mayor and Aldermen of Union City, supra,* to support this view.

Again, we think counsel is mistaken in his assumption. If the act authorizing the power of eminent domain provides for the condemnation of property theretofore devoted to a public use, it does not have to specify such property by description, name, or other individual characteristic, but may delegate to a public agency the right to select such property, so devoted to a public use, as in the discretion of such agency will tend to promote and subserve the purposes of the act.

The turnpike company contends that the petition does not aver that there is any necessity for taking its property, and that consequently it is fatally defective, as such averment is jurisdictional.

Section 5, chapter 74, Acts of 1917, authorizes and empowers the State Highway Department to designate the road or roads to be constructed, repaired, or maintained by the use of the funds provided for by said act and to lay out and to locate all such roads.

The petition avers that the turnpike of the defendant in error has been selected by the State Highway Department as a link in the state and national highway to be known as the "Jackson Highway," and that this suit is brought by the county for the purpose of securing this link by condemnation.

As the State of Tennessee has delegated to the State Highway Department, in the exercise of its discretion, the power to determine what roads shall be taken as parts of

the Jackson Highway, it conclusively follows that the county, acting on behalf of the State Highway Department, which has exercised its discretion, has determined the necessity of condemning the property of the defendant in error as a part of said highway.

In *Bragg* v. *Weaver,* 251 U. S., 57, 40 Sup. Ct., 62, 64 L. Ed., 135, it is said:

"Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the State may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment"— citing numerous cases.

It is everywhere settled that, in the absence of a clear and palpable abuse of power, the determination of the necessity for the taking and what property shall be taken is not a question for the judiciary, but for the legislature or the body to whom the right of eminent domain is delegated by it. 10 R. C. L., section 158.

Other questions of a minor character are made in the extended brief and argument of counsel for the defendant in error, but the above constitute the really important questions raised and discussed.

We have examined carefully the authorities cited in the learned brief of counsel for the defendant in error, but, concluding that the questions presented on this appeal have been determined by previous adjudications of this court, as well as by the construction of the various stat-

utes herein involved, it would be useless in detail to refer to these cases in so far. as they may tend to support the contentions of the defendant in error.

The case has received careful consideration at the hands of the court, but, being satisfied that a proper construction of the acts of our legislature governing the matter require us to reach the conclusions above announced, we are constrained to reverse the judgment of the court below and remand the case to that court, with directions to overrule the demurrer of the turnpike company and to take further proceedings not inconsistent with this opinion.