FIRST NAT. BANK OF COVINGTON v. CITY OF COVINGTON et al.

(Circuit Court, D. Kentucky. August 14, 1900.)

1. TAXATION—RETROACTIVE STATUTES—CONSTITUTIONALITY.

A legislature probably cannot constitutionally enact a retroactive law imposing taxes for previous years upon property which was not during such years subject to taxation under any valid law.

2. SAME—NATIONAL BANKS—DISCRIMINATION.

St. Ky. § 4077, enacted in 1892, provided for the taxation of the franchises of all corporations for state and local purposes. As applied to national banks, such statute was held invalid by the supreme court of the United States, as in violation of Rev. St. § 5219, which prohibits the taxation of shares of national banks at a greater rate than is imposed on other moneyed capital. By act of March 21, 1900, it was provided that shares of stock of national banks should be assessed and taxes collected thereon in the same manner as real estate, and (section 3) that such banks which had not paid franchise taxes under the prior law should be assessed on their stock thereunder for the years subsequent to 1892. *Held*, that such retroactive provision could not be upheld as a curative statute, the prior law being void as to national banks, and that it was itself invalid, as in violation of Rev. St. § 5219, being applicable to national banks alone, without any provision for the retroactive taxation of other moneyed capital in the hands of individual citizens, and it being very improbable that the tax thereby imposed was the equivalent of the franchise tax required to be paid by other corporations.

3. SAME.

Such provision is also invalid upon the further ground that it imposes double taxation, as applied to a national bank which had accepted and each year paid taxes under the Hewitt act of 1886, which imposed a fixed tax for state purposes upon each share of bank stock, and provided that any bank which accepted its provisions and paid the tax thereby required should be exempted from all local taxation, notwithstanding a general provision of the new law that credit should be allowed for taxes paid under the Hewitt act; there being no provision either in the act itself, or in the other laws of the state, by which such credit can be enforced or allowed.

4. SAME.

A state law taxing national banks by requiring their shares to be listed and assessed, and taxes to be levied thereon in the same manner as real estate, is not the equivalent in law, and prima facie not the equivalent in fact, of a law requiring state banks and other corporations to pay taxes upon a valuation of their franchises, and can only be sustained, under Rev. St. § 5219, by proof showing that in its operation it does not result in discrimination.

5. INJUNCTION—RESTRAINING COLLECTION OF TAXES.

A national bank may maintain a suit in equity in behalf of its shareholders to enjoin the collection of taxes upon its shares under a law claimed to be invalid; and, where the validity of the entire tax is contested, the complainant will not be required to pay any part of the tax as a condition to the granting of a preliminary injunction.

In Equity. On motion for preliminary injunction.

J. W. Bryan, for complainant.

W. H. Julian (F. J. Hanlon and Harvey Myers, of counsel), for defendant.

EVANS, District Judge. The complainant brings this action to enjoin the city of Covington and its officers from assessing and collecting for municipal purposes the taxation on its shares of capital

stock provided for in the act of the general assembly of Kentucky approved March 21, 1900, entitled "An act relating to the taxation of shares of stock of national banks," which is as follows:

"Whereas, the supreme court of the United States has lately decided that article 3, chapter one hundred and three, of the acts eighteen hundred and ninety-one, eighteen hundred and ninety-two, eighteen hundred and ninety-three, is void and of no effect in so far as the same provides for the taxation of the franchise of national banks, in consequence of which decision there is not now and has not been since adoption of said article in eighteen hundred and ninety-two, any adequate mode of taxing national banks, while state banks are now and have been ever since eighteen hundred and ninety-two taxable for all purposes, state and local; therefore—be it enacted by the general assembly of the commonwealth of Kentucky:

"Section 1. That the shares of stock in each national bank of this state shall be subject to taxation for all state purposes, and shall be subject to taxation for the purposes of each county, city, town and taxing district in which the bank is located.

"Sec. 2. For the purposes of the taxation provided for by the next preceding section, it shall be the duty of the president and the cashier of the bank to list the said shares of stock with the assessing officers authorized to assess real estate for taxation, and the bank shall be and remain liable to the state, county, city, town and district for the taxes upon said shares of stock.

"Sec. 3. When any of said shares of stock have not been listed for taxation for any of said purposes under levy or levies of any year or years since the adoption of the revenue law of eighteen hundred and ninety-two, it shall be the duty of the president and cashier to list the same for taxation under said levy or levies: provided, that where any national bank has heretofore, for any year or years, paid taxes upon its franchise as provided in article three of the revenue law of eighteen hundred and ninety-two, said bank shall be excepted from the operation of this section as to said year or years: and provided further, that where any national bank has heretofore, for any year or years, paid state taxes under the Hewitt bill in excess of the state taxes required by this act for the same year or years, said bank shall be entitled to credit by said excess upon its state taxes required by this act.

"Sec. 4. All assessments of shares of stock contemplated by this act shall be entered upon the assessor's books, certified and reported by the assessing officers as assessments of real estate are entered, certified and reported, and the same shall be certified to the proper collecting officers for collection as assessments of real estate are certified for collection of taxes thereon.

"Sec. 5. The assessment of said shares of stock and collection of taxes thereon, as contemplated by this act, may be enforced as assessment of real estate and collection of taxes thereon may be enforced.

"Sec. 6. The purpose of this act is to place national banks of this state. with respect to taxation, upon the same footing as state banks as nearly as may be consistently with said article three of the revenue law and said decision of the supreme court.

"Sec. 7. Whereas, it is important that state banks and national banks should be taxed equally for all purposes, an emergency exists, and this act shall take effect and be in force from and after its passage."

To clearly understand the scope of this very important controversy, it is necessary to say that in 1886, in an effort to remedy the confusion growing out of certain unrepealable provisions in the charters of the older banks in regard to taxes, the legislature passed what is commonly called the Hewitt act, the pertinent provisions of which are as follows:

"Section 1. That shares of stock in state and national banks, and other institutions of loan or discount, and in all corporations required by law to be taxed on their capital stock, shall be taxed 75 cents on each share thereof, equal to $100, or on each $100 of stock therein owned by individuals, corporations or societies, and said banks, institutions and corporations shall, in addi-

tion, pay upon each $100 of so much of their surplus, undivided surplus, undivided profits or undivided accumulations as exceeds an amount equal to 10 per cent. of their capital stock, which shall be in full of all tax, state, county and municipal.   *   *   *"

"Sec. 4. That each of said banks, institutions and corporations, by its corporate authority, with the consent of a majority in interest of a quorum of its stockholders, at a regular or called meeting thereof, may give its consent to the levying of said tax, and agree to pay the same as herein provided, and to waive and release all right under the act of congress, or under the charters of the state banks, to a different mode or smaller rate of taxation. which consent or agreement to and with the state of Kentucky shall be evidenced by writing under the seal of such bank and delivered to the governor of this commonwealth; and upon such agreement and consent being delivered, and in consideration thereof, such bank and its shares of stock shall be exempt from all other taxation whatsoever so long as said tax shall be paid during the corporate existence of such banks."   Gen. St. Ky. 1886, c. 92, art. 2.

This rate of taxation, all the avails of which went to the state, was higher than that paid by other property, but on that account the banks were exempted from local taxation.   In 1892 the legislature enacted what is now section 4077 of the Kentucky Statutes, as follows:

"Sec. 4077. Every railway company or corporation, and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like company, corporation or association, and also every other corporation, company or association having or exercising any special or exclusive privilege or franchise, not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county. incorporated city. town and taxing district, where its franchise may be exercised.   The auditor, treasurer and secretary of state are hereby constituted a board of valuation and assessment for fixing the value of said franchise, except as to turnpike companies, which are provided for in section 4095 of this article, the place or places where such local taxes are to be paid by other corporations on their franchises and how apportioned, where more than one jurisdiction is entitled to a share of such tax, shall be determined by the board of valuation and assessment, and for the discharge of such other duties as may be imposed on them by this act.   The auditor shall be chairman of said board, and shall convene the same from time to time as the business of the board may require."

Section 4078 prescribed the manner of ascertaining the value of the franchises to be assessed.   As a basis for this assessment, banks, under section 4092, were required to make reports on the 1st day of March of each year of their condition the preceding 31st day of December, and to pay the tax on July 1st following.   This subsequent legislation was intended to repeal, and in express terms did repeal, the Hewitt law.   After the enactment of the legislation last referred to, the complainant, in November, 1893, instituted an action in the state court to enjoin the levy for that year, as against it, of the taxation thereby provided for, and in its petition averred that long before the enactment of this legislation it had accepted the provisions of the Hewitt act, within the time named therein, and that it had up to that date paid the taxes provided for by the terms of the Hewitt act, as accepted by complainant, and in due

form sought the judgment of the state court upon its claim that the Hewitt act, and its acceptances thereof, constituted an irrevocable contract between the complainant and the state of Kentucky, which the legislation of 1892 would impair. The court in which the action was brought in 1894 distinctly adjudged that this contention was well founded, and that the provisions of the Hewitt act, and their acceptance by the complainant, did constitute an irrevocable contract between the state and this bank, and, further, that the legislation of 1892 was void as to the complainant, as impairing that contract. The decision of the court of appeals of Kentucky affirming that judgment, being in favor of the right claimed under the constitution of the United States, could not be appealed to the supreme court of the United States. The bill of complaint, as amended, in the case before us, insists not only that the question of taxation between the complainant and the state of Kentucky, including the municipality of Covington, up to 1904, is conclusively settled and adjudged by the court of appeals upon the basis referred to, but that the act of March 21, 1900, is also unconstitutional—First, in its attempt, by section 3, to authorize the levy of taxation upon the complainant for the years previous to March 21, 1900; and also, second, because the taxation provided for by the said act discriminates against national banks, and levies upon the shares of national banks a greater rate of taxation than is levied upon other moneyed capital, and particularly upon capital invested in state banks, and denies them the equal protection of the law.

As clearly established by many decisions, and particularly by that announced in the case of Owensboro Nat. Bank v. City of Owensboro, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850, all state laws providing for the taxation of shares of national banks must be subject to the provisions of section 5219 of the Revised Statutes of the United States, which is in this language:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

The supreme court, in the case last referred to, held that section 4077 of the Kentucky Statutes, so far as it affects national banks, is void, because it is in conflict with that section. The Hewitt law having been repealed in 1892, and section 4077 of the Kentucky Statutes being void as to national banks, there was no state statute in force for taxing the shares of the latter for municipal purposes until the act of March 21, 1900, was passed. The third section of that act is now assailed upon the ground that it undertakes to tax those shares retroactively and illegally. The court will not attempt

to decide that there may not, in extreme cases, be a legitimate statutory enactment imposing a retroactive taxation for previous years upon a class of property not then subject to taxation at all. But it would at least be a rare case, and one which would come extremely near to taking property for public use without just compensation, and might be most dangerous and oppressive, as well as destructive of many other established principles of the law of taxation. If the power to do this exist at all, there is no limit to it; and it might illustrate the subject to consider the result if church property now exempt should, as it lawfully might, be made subject to taxation in the future, and not only so, but retroactively, for 10, or 20, or even 50 years back. Here would be a practical confiscation of such property for public use. Nor does the court mean to deny that where the law in fact imposes taxation upon property, which, however, is overlooked by the assessor, or otherwise omitted from the assessment, or some other step is taken which is faulty, the defects may not be cured by legislation. That curative legislation is admissible in such cases is a well-established doctrine of the courts, but there was in Kentucky no legislation—valid legislation—for taxing national bank shares as such before March 21, 1900; and the act of that date was not passed to validate defective steps taken to levy a lawful tax, but it is legislation which imposes an altogether new tax upon a new subject. Any attempt to give it the appearance of being a curative statute is merely nominal and colorable, and cannot be effective. The previous legislation had been void because it was opposed to section 5219, Rev. St., and could not be cured, though other new and different legislation might be enacted. Moreover, it imposes a tax upon national bank shares alone, and the retroactive feature of section 3 is a manifest discrimination against national bank shares, as there is no corresponding provision in any law of the state for the retroactive taxation of moneyed capital in the hands of state banks or of individuals. Other banks paid, and now pay, only a franchise tax for municipal purposes. National banks must, according to the act, pay, not a tax equivalent to the franchise tax imposed upon state banks, but a tax the rate of which is the same as that upon "real estate," which rate might not comply with section 5219 of the Revised Statutes, unless it is the same as that put upon other "moneyed capital," as that phrase has been construed by the supreme court. It is manifestly very improbable that the rate of taxation on real estate can be equivalent to the rate imposed by the franchise tax. At all events, for the reasons indicated, it seems to the court to be very clear that section 3 of the act conflicts with the requirements of section 5219, because there is nowhere any corresponding retroactive imposition on state bank shares, and the rate of taxation on real estate can hardly be the equivalent of the rate of taxation imposed on state banks by the franchise tax. And besides, as the bill shows, the state has collected and received from the complainant in this case the high taxes imposed under the Hewitt law up to the current year. There is no way to sue the state of Kentucky in her courts to compel it to refund the tax thus paid. Nor is there any way to compel the state

to' make an adjustment of such payments in the collection of the taxes under section 3 of the act of 1900, although it is therein vaguely provided that credit shall be given, but our laws afford no way authoritatively to make the provision effective. No officer is charged with the duty or given the power to make it so. Until the state in this case has refunded the taxes wrongfully collected (if it should so turn out) under the Hewitt act, or shall provide some adequate way for doing so, it must be content with the taxation levied in the way provided by its own legislation,—at least, so long as it retains the money. Otherwise, there would be a double taxation. Certainly the state must not, in attempts to correct its legislation upon the subject of taxation, discriminate against national bank shares in such a way as to violate section 5219. So long as the state retains the taxes collected under the Hewitt law from this national bank, it is a manifest discrimination against it to again retroactively tax its shares for the same years, without taxing also in the same way the state banks. We may sum up this phase of the case by saying that it may, in the abstract, be legally possible to pass a valid retroactive tax law, yet in the concrete case before us it was not done; the attempted legislation, for the reason indicated, being in conflict with section 5219.

As the present holders of the complainant's shares may be very different persons from those who held them in previous years, as the present holders may have purchased under the previously existing law, and as their rights and interests would be injuriously affected by large payments for retroactive taxation, at least one phase of what has been said is well supported by the reasoning of the opinion of the court of appeals in Town of Bellevue v. Peacock, 89 Ky. 495, 12 S. W. 1042. When the town of Bellevue made a contract with certain persons to improve a street, it was supposed by all parties that the law empowered the town to impose the cost upon the abutting property, and the contract so required. The court of appeals, however, decided that the town had no such power. Subsequently the legislature passed an act attempting to validate the contract, and to impose the necessary taxation retrospectively upon the property. In a suit to test that question the court, in the opinion referred to, held the act unconsitutional, largely upon the ground that, as there was no law to so burden the property at the time the improvements were made, the legislature could not subsequently impose it. The complainant and its shareholders in the case before us stand in substantially the same position as did the owners of the abutting property in the Bellevue Case in respect to previous judicial decisions and otherwise. There was no law, until the act of 1900, imposing any such liability as it attempted to create; and, at least unless a similar burden is imposed upon other moneyed capital, the retroactive liability canot be imposed upon national banks.

Coming now to the question of whether the whole act of March, 1900, is void, as being in conflict with section 5219 of the Revised Statutes, it must be borne in mind that this may be manifested in either of two forms: First, it may appear on the face of the state law itself, as in the statute of 1892, pronounced invalid by the supreme

court in the case of Owensboro Nat. Bank v. City of Owensboro, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850; or, second, it may come in the manner of enforcing the state law, or in the manner of operating under it, as in cases like People v. Weaver, 100 U. S. 539, 25 L. Ed. 705, and Whitbeck v. Bank, 127 U. S. 193, 8 Sup. Ct. 1121, 32 L. Ed. 118. It goes without saying that money invested in national bank shares should bear its ratable portion of the public burdens. Nothing in the legislation of congress, nor in the decisions of the courts of the United States, in the slightest degree prevents this. All that is done is, under section 5219, to guard money so invested against any form of state taxation which puts it at a disadvantage as compared with money invested in state banks. . The wisdom and necessity of this rule is obvious. The professed object of the act of 1900 is to make the taxation upon all banks equal. The operations of the act may possibly in the future bring about such a result, though upon the face of the statute it appears well-nigh impossible. Prima facie, a discrimination exists, the one being taxed on an entirely different basis or plan from the other. The state banks pay taxes upon a valuation of their franchise, etc., and national banks upon the valuation of their shares in the hands of individual holders. By no intelligent system of valuation does it appear possible to value a franchise annually as high as all the property of the corporation as appears to be necessary in order to make the two modes of taxation agree. These cannot be equivalent in law, and prima facie they appear not to be equivalent in fact, though possibly this latter appearance may be overcome by proof. The city of Covington would, therefore, appear to be entitled to have an opportunity, if so desiring, to plead and prove that the result of the operations of the act of 1900 will not in fact discriminate in the next fiscal year against money invested in national bank shares; and, after this opportunity is afforded, the court can determine upon the evidence whether the actual results under the act conflict with section 5219, by imposing a greater rate of taxation upon money invested in national bank shares than upon that invested in state bank shares, should there be any moneyed capital in said city so invested as to bring it within the rules adopted by the supreme court in construing section 5219.

In this particular case, however, the views so far expressed may all become subordinate to the question most energetically urged, that, as to the complainant, the act of 1900 can have no operation before 1904, because up to that time it has an irrevocable contract with the state to the effect that its shares shall only be taxed according to the provisions of the Hewitt law, and that this matter has been finally adjudicated by the courts of the state in the manner stated in the bill. The general doctrine as to the conclusive effect of judgments upon matters in controversy between the same parties, or those in privity with them, is certainly broad enough, as usually stated, to cover cases like this, if there are no exceptions to it. The case of City of New Orleans v. Citizens' Bank, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202, goes far towards closing the question, and will do so unless its operation should be limited by considerations now to be stated. Of course, as to the claim for taxes for the year named in the suit described in the

103 F.—34

bill of complaint, the judgment is absolutely conclusive, although, in the light of later decisions, palpably erroneous. Should its effect be limited to the taxes for the year named in that suit, under the circumstances about to be stated, is an extremely interesting question. The judgment relied upon in the bill was certainly based upon the opinion that the Hewitt law, and the complainant's acceptance of its provisions, constituted an irrevocable agreement between the bank and the state of Kentucky that the former should not be taxed otherwise than pursuant to the Hewitt law for any purpose, but in terms it only embraced the taxes for the year 1893, and only enjoined their collection. It did not, in its language or scope, embrace any others. It, however, as stated, went upon the general doctrine that there was a contract thus created between those parties, which the federal constitution protected from any impairment. Bank-Tax Cases, 97 Ky. 591, 31 S. W. 1013. Within a year or so after this judgment was rendered, and from which no appeal could be taken to the supreme court of the United States, for the reason already indicated, the court of appeals overruled the doctrine which it had therein announced, and expressly held that there was no contract growing out of the facts adjudicated in the previous litigation. Id., 39 S. W. 1030. It was then also held that legislation as to the manner of imposing taxation could not be made the basis of a contract, but was a matter entirely under the control of the state, and might be altered at its' pleasure. In the case of Citizens' Sav. Bank v. City of Owensboro, 173 U. S. 636, 19 Sup. Ct. 530, 43 L. Ed. 840, the supreme court sustained in the fullest manner the last view taken of the question by the court of appeals of Kentucky. So that we have here a claim to the benefit of the doctrine of res adjudicata, as against the clearest decision that the judgment relied on was based upon a proposition, not of fact, but of constitutional law, which has been utterly repudiated, not only by the highest judicial tribunal in Kentucky, which had announced it, but also by the supreme court of the United States itself. I have not found any decision upon the exact point; but I am greatly oppressed by the thought that common justice may demand such a relaxation of the general rule as to matters adjudicated as to limit its operation, within very wide bounds, it is true, but still to such as will exclude a case precisely like this, so far, at least, as it affects taxation subsequent to the announcement of the final settlement of the constitutional doctrine. Otherwise, much injustice and inequality cannot be avoided. It is possible that it was with a purpose and desire to consider this phase of the question when it should come up that the supreme court, in the Owensboro Case, 173 U. S., at page 648, 19 Sup. Ct. 534, 43 L. Ed. 844, so explicitly withheld an expression of its opinion as to whether the principle of res adjudicata would apply to suits for taxes claimed for future years, in a case where there had been such a judgment as is here pleaded. It may be that the authorities, which are very strong, will not permit even such an exception to be grafted upon the general rule; and it may also be that I shall ultimately conclude that in any event it will be becoming, in view of the opinion in the case of City of New Orleans v. Citizens' Bank, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202, for this court to leave it to a higher tribunal to say

whether there should be any limitations upon the general rule as to the conclusive effect of judgments as between the parties to the litigation. But, as the decision of the motion for a temporary injunction does not absolutely require a final expression on the question, I shall leave it open for further consideration.

It has been suggested that, before any injunction is granted, the complainant in such a case should pay the amount of taxes which is fairly due from it. This is a principle certainly in force where a valid law leaves no doubt that something is due. But, if the claim of res adjudicata made by the complainant is maintained, such payment in this case has already been made. And, even if the principle could apply here at all, where the entire tax is contested, it can hardly be enforced until a final judgment has determined whether there is anything at all due from the complainant; and, besides, there appears to be manifest equity in the bill, so far as it seeks to enjoin the enforcement of section 3 of the act.

It is also insisted that for the case made by the bill there is an adequate remedy at law. The case of Bank v. Stone (C. C.) 88 Fed. 383, is a sufficient authority to the contrary. That case, it is true, was affirmed by a divided court (174 U. S. 408, 799, 19 Sup. Ct. 881, 43 L. Ed. 1187). And, besides, the relief sought as to section 3 of the act appears to be decisive of this question. It also seems to be settled upon the authority of Hills v. Bank, 105 U. S. 319, 26 L. Ed. 1052, and the cases there cited, that the bank itself may sue in cases like this, to protect the interest of its shareholders.

It follows that the complainant is entitled to an injunction pendente lite, restraining the defendants, and each of them, until the further order of the court, from making, either against the complainant or any holder of its shares, any assessment or levy of any taxes upon the shares of complainant's capital stock for any purpose, for any time or period previous to March 21, 1900, and also, until the further order of the court, restraining the defendants, and each of them, from collecting, either from the complainant or from any of the holders of shares of its capital stock, any taxes upon any of said shares upon any assessment or levy to be made therefor for any time subsequent to that date. The defendants are left at liberty to make assessments of said shares for taxation for any proper time or period after March 21, 1900; but not to make any collection of taxes so assessed until the court shall have determined from the evidence whether the taxes so assessed are at a rate higher than is permitted by section 5219, Rev. St., and, if so, to what extent. Counsel will prepare the proper orders.