## STATE v. CRETE MINING COMPANY.[1]

July 17, 1925.

No. 24,768.

**Statute imposing tax on miners of iron ore not retrospective.**
1. Chapter 223, Laws 1921, imposing a tax on persons engaged in the business of mining iron ore, speaks prospectively and not retrospectively. One whose mining operations ended prior to April 11, when the statute went into effect, and who did not resume operations during the year 1921, is not subject to the tax for that year.

**Not apparent that statute placed tax on occupation not pursued when act took effect.**
2. Neither by express command nor by necessary and unavoidable implication does it appear in the act that the legislature intended to reach back and fasten a tax upon an occupation not followed when the act took effect.

1. See Licenses, 37 C. J. p. 212, § 66.
2. See Licenses, 37 C. J. p. 212, § 66.

[1]Reported in 204 N. W. 932.

Action in the district court for Ramsey county to collect an occupation tax. The case was tried before Michael, J., who ordered judgment in favor of plaintiff. Defendant appealed. Reversed.

*Washburn, Bailey & Mitchell*, for appellant.

*Clifford L. Hilton*, Attorney General, and *G. A. Youngquist*, Assistant Attorney General, for respondent.

LEES, C.

The state sued to collect the occupation tax imposed by virtue of chapter 223, p. 274, L. 1921, which went into effect on April 11, 1921. The issues were tried by the court without a jury, judgment for the state was ordered, and defendant appealed.

The substance of the findings is that between January 1, 1921, and April 10, 1921, the defendant was engaged in the business of mining iron ore, but was not so engaged in any portion of the year 1921 after April 9. The question for determination is whether in these circumstances the defendant is subject to the tax.

In section 1 of the act we find this language:

"Every person engaged in the business of mining or producing iron ore * * * in this state shall pay * * * an occupation tax equal to 6 per cent of the valuation of all ores mined or produced * * * said tax to be due and payable from such person on May 1 of the year next succeeding the calendar year covered by the report thereupon to be filed as hereinafter provided."

Section 3 provides:

"Every person engaged in such mining or production of ores shall, on or before the first day of February, 1922, and annually thereafter on or before the first day of February of each year, file with said commission (the Minnesota Tax Commission) under oath a correct report in such form and containing such information as the tax commission may require, covering the preceding calendar year."

Section 4 provides that if the tax commission finds that the report is correct it "shall, on or before May 1, find and determine therefrom the amount of tax due from such person."

If persons who mined prior to the enactment of the law only are subject to a tax for 1921, the law operates retroactively.

In Builders L. M. L. Ins. Co. v. Compensation Ins. Board, 151 Minn. 427, 186 N. W. 860, Judge Taylor said:

"It is thoroughly settled that a statute will not be given a retroactive operation unless it appears 'by express command or by necessary and unavoidable implication' that such was the legislative intent. And, where a statute affects rights and liabilities, it will not be construed as affecting those previously existing, unless such construction is essential to give it effect, or its terms are so explicit as to preclude any other interpretation."

Testing chapter 223 by this rule, we inquire whether it appears by express command or by necessary and unavoidable implication that the legislature intended to impose a tax upon persons and corporations who mined no ore in the year 1921 after April 10.

In approaching the question, we should keep in mind certain fundamental principles. In his treatise on the law of taxation, Judge Cooley says in substance that the courts always construe statutes as prospective and not retrospective, unless constrained to the contrary course by the rigor of the phraseology. There is commonly a presumption that a new tax law was not intended to reach back and take for its standard of apportionment a state of things that may no longer be in existence. New burdens ought always to be prospective, and it is reasonable to suppose that the legislature has intended that they should be. He also says, quoting Judge Story, that, in the interpretation of statutes levying taxes, the courts should not extend their provisions by implication beyond the clear import of the language used, or enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy. 2 Cooley, Tax. 503, 514. The latter statement is repeated by the Supreme Court of the United States in Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. ed. 211, with the addition that, in case of doubt, statutes levying taxes are construed most strongly against the government and in favor of the citizen.

In this state the rule of strict construction of tax laws has not

been adopted. In State v. W. U. Tel. Co. 96 Minn. 13, 104 N. W. 567, it was said that no consistent rule of interpretation has been laid down by the authorities and that a statute imposing a tax is to be construed fairly and reasonably so as to effectuate legislative intention, and to compel property protected by the state to contribute its ratable share of public revenue, and to avoid discrimination in taxation between property owners. State v. Bazille, 97 Minn. 11, 106 N. W. 93, also rejects the rule of strict construction and follows State v. W. U. Tel. Co.

The possible consequences of retroactive tax laws are suggested in First Nat. Bank v. City of Covington (C. C.) 103 F. 523. The court characterized the power to impose a retroactive tax as "dangerous," and said that if it "exists at all, there is no limit to it; and it might illustrate the subject to consider the result if church property now exempt should, as it lawfully might, be made subject to taxation in the future, and not only so, but retroactively, for 10 or 20, or even 50 years back."

In Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614, it was said that a statute which creates a new obligation, or imposes a new duty, in respect to transactions already past, is retroactive; that the right to exercise the power to impose a duty which did not exist before is doubtful, and that an intention to exercise it is not to be inferred unless there is a clear expression of the legislative will to that effect.

In State v. Hill, 32 Minn. 275, 20 N. W. 196, it was claimed that a statute increasing salaries affected the portion of the year which had elapsed before the statute was enacted, but it was held that the law became operative from and after its passage and only during the remainder of the official year were the salaries to be paid at the new rate.

The effect of burdening a past transaction with an obligation which did not exist when it occurred is the subject considered in Ohio Valley Tel. Co. v. City of Louisville, 123 Ky. 193, 94 S. W. 17, and New England Mtg. Secur. Co. v. Board, 81 Ala. 110, 1 South. 30. Both cases illustrate the application of the doctrine announced by Judge Cooley.

We are of the opinion that chapter 223 has a retroactive operation if it is applicable to defendant, notwithstanding the fact that no ore was mined after April 10 and before the end of the year 1921. The ultimate question therefore is whether the legislature intended to go back and tax mining operations which had been completed before the law was passed.

The tax imposed is an excise tax. The amount is determined by ascertaining the value of the ore produced and deducting therefrom the major costs of its production. The tax is measured by the result of the operations in the year preceding the assessment thereof.

Appellant's counsel concede that the legislature may levy a tax on the income received from property during a certain period of time and provide that the period shall embrace a time before as well as after the passage of the law, and that in such case the tax is measured by the income received within the stated period. The concession is broad enough to include an occupation tax, provided the occupation is pursued after as well as before the date of the enactment of the statute and in the same calendar year.

Under chapter 223 the thing taxed is the business or occupation of mining. If the business is not carried on, there is nothing to tax. Defendant did not carry it on after April 11, 1921. If it had, it would have been its duty to include in its report to the tax commission a statement of the value of the ore mined before as well as after that date, and to pay a tax based on the total value reported, instead of the proportion thereof which the time that the act was in force during 1921 bore to the whole year. Billings v. U. S. 232 U. S. 261, 282, 34 Sup. Ct. 421, 58 L. ed. 596; U. S. v. Bennett, 232 U. S. 299, 34 Sup. Ct. 433, 58 L. ed. 612; Dohs v. Holm, 152 Minn. 529, 189 N. W. 418.

Laws for the taxation of property generally fix on some particular date in the year when the taxability, as well as the value of the property, is to be determined. Every man must pay taxes on the property he owns then, no matter how short a time he may have owned it or how soon thereafter it is lost. County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942.

But a tax on property in existence when the law was passed is one thing; a tax on a privilege which has been completely exercised before the law was passed is quite another.

In People v. Trust Co. 205 N. Y. 74, 98 N. E. 207, speaking of a mortgage registry tax, the court said that the legislature could not impose such a tax upon a transaction which, at the time it was effected, was subject to no tax. Without assenting to the bald statement that a tax may never be imposed on a past transaction, as distinguished from a tax imposed on property, we think everyone will agree that an intent to do so should be so evident as to admit of no serious doubt.

There is no satisfactory evidence that the legislature intended to tax those whose mining operations were completed prior to April 11, 1921, and who did not reengage in the business before the calendar year ended. There is no unavoidable implication of such a purpose. Full effect can be given to chapter 223 without placing such a construction upon it. In spite of the earnestness and ability of the argument in favor of the construction advocated by the attorney general, we are clearly of the opinion that it cannot be adopted without imputing to the legislature an intention to depart from the established policy of restricting the operation of a tax law to the future and of making the law speak prospectively and not retrospectively.

The state greatly relies on Billings v. U. S. supra. That case dealt with a revenue act, approved August 5, 1909. Among its provisions was one imposing a tax upon *the use* of foreign-built pleasure yachts, the tax to be levied and collected annually on the first day of September. Suit was brought against Billings to compel him to pay the tax levied on September 1, 1909. One of the questions which arose was whether he was subject to the payment of the full amount of the annual tax or only to an amount proportionate to the fraction of the calendar year represented by the time during which the act was in force prior to September 1, 1909. It was held that he must pay the tax for an entire year. On its face the opinion would seem to be authority for the contention of the

attorney general, but the report of the case fails to state a fact we regard as highly important. The record shows that on April 26, 1909, Billings took out a commission in compliance with the statutes of the United States regulating commerce and navigation, which permitted the vessel to proceed by sea to foreign ports and required the surrender of the commission on the return of the vessel to the United States. On August 26, 1909, the commission was surrendered, hence it appears that the vessel was used by the owner in a voyage which was not completed until after the act of August 5 had been in effect for three weeks. In the light of this fact, it is evident that the court did not hold that the owner of a yacht, who had ceased to use it before the act went into effect, was nevertheless subject to the payment of an excise tax.

The findings of fact do not entitle the state to judgment. The judgment is reversed and the cause remanded for the entry of judgment in defendant's favor.