R. H. Baker, Commissioner of Highways, etc., *v.* Mont Donegan.

(*Nashville,* December Term, 1931.)

Opinion filed April 9, 1932.

Opinion on petition to rehear filed July 23, 1932.

L. D. SMITH, Attorney-General; JOHN L. NEELY and ROY H. BEELER, Assistant Attorneys-General, for plaintiff in error.

HOWARD E. BROWN, for Dickson County.

FRANK S. HALL and EARL A. BROWN, for Mont Donegan, defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This action was begun in 1929, by petition of the Commissioner of Highways and Public Works of the State, seeking condemnation under the law of eminent domain of certain lands of Donegan, for highway purposes. The action was successfully prosecuted, and a jury of view assessed the damages. At the time the report of the jury of view was filed the existing statutes placed the burden of payment for the land taken upon the County of Dickson. The county excepted to the report of the jury of

view, and demanded a jury trial in the circuit court upon the question of the amount of the damages to which Donegan was entitled.

The case so stood when the General Assembly enacted chapter 57 of the Public Acts of 1931, the general purpose of which was to transfer to the State liability for the payment of the cost of rights of way for state highways, to be paid by the State "as other highway expenses are paid." Pursuant to this statute, the circuit court rendered judgment for Donegan's damages against the State, and the State has appealed in error. Donegan did not appeal, and no assignments of error are made for him.

The statute of 1931, appears to have been enacted pursuant to a general scheme or policy to transfer to the State that part of the cost of the construction of the state highway system which had theretofore been cast upon the several counties. See Acts 1927, chapter 23, as amended by Acts 1931, chapter 59, and the opinion this day filed in *R. H. Baker, Commissioner, etc.*, v. *Hickman County*, 164 Tenn., 294.

At the time the State took possession of Donegan's land, the general revenues of the county were liable for the payment of compensation therefor. *State Highway Department* v. *Mitchell's Heirs*, 142 Tenn., 58, 216 S. W., 336. It is insisted for the State that the Act of 1931, relieving the county of this liability to Donegan, would amount to the taking of Donegan's property without due process of law, etc. We are of the opinion that any question of this character is a right personal to Donegan, and since he does not complain that the State is substituted for the county as the party liable to him, the State has no standing to make the question.

■ Neither is it a valid constitutional objection to the effectiveness of the statute of 1931, that execution may not be awarded to Donegan to enforce payment of his judgment. Judgment was properly rendered against the State in an action instituted by the State, through the head of one of its administrative departments. It is the duty of the Commissioner of Highways to pay the judgment out of any moneys under his control, available for the construction of a highway, and his compliance with that duty may be enforced by *mandamus*. *Peerless Const. Co.* v. *Bass,* 158 Tenn., 518, 14 S. W. (2d), 732; *State ex rel.* v. *Hamblen County,* 161 Tenn., 575, 33 S. W. (2d), 73. The possible absence of funds for the satisfaction of the judgment does not interfere with the jurisdiction of the circuit court to render it.

■ An assignment of error is made that the Act of 1931, is unconstitutional and void, in that it contains provisions not germane to its caption. The argument on this point is technical in its nature, and we find it untenable, in view of the established rules of construction followed in the application of article 2, section 17, of the constitution to statutes enacted by the General Assembly.

■ The record discloses that prior to the institution of the proceedings for the condemnation of Donegan's property, the Department of Highways and Dickson County entered into a contract or agreement for a division of the cost and expense of the construction of the road, and that pursuant to the general policy of the State, as well as the express requirement of the law as it then existed, the county agreed generally to furnish all rights of way necessary for the proposed road.

The Act of 1931, excludes from its application cases in which a county has agreed with the Department of High-

ways to cooperate under the law as it existed prior to 1931, but it is expressly provided in section 3 of the Act that no county shall be deemed to have entered into such an agreement unless the proposal therefor was authorized by the quarterly county court, "setting forth in detail the proposed improvement with location and routing, the landowners and their respective properties in areas and improvements affected thereby," etc.

No such detailed agreement binding the County of Dickson to pay for Donegan's land was made, and this case therefore does not fall within the exception to the general policy of the Act of 1931.

■ That the General Assembly was within its constitutional powers in relieving Dickson County, by general statute applying to all counties alike, from the burden imposed upon the county by previous statute, as well as by agreement or contract with. the State, is indicated in our opinion this day filed in *Baker* v. *Hickman County*, referred to above.

We find no constitutional infirmity in the Act of 1931, chapter 57. The judgment rendered by the circuit court was in accord with it, and that judgment is accordingly affirmed.

## On Petition to Rehear.

In the opinion heretofore filed we held that the State had assumed the burden of compensating Donegan for his land, notwithstanding the county had, in 1927, entered into an agreement with the State to bear its stipulated share of the cost of the proposed highway and to furnish all necessary rights of way. In so holding we held that the agreement thus made by the county was not effective to bring the county within the proviso of section 2 of the

statute (Acts 1931, chapter 57), because the agreement contemplated by the proviso is defined in section 3 of the statute as containing much particularity which the agreement of 1927, between Dickson County and the State did not contain.

An able petition to rehear filed for the State by the Attorney-General and his associates contends that section 3 of the statute is prospective only in its application, both because of its language and form, and because it imposes requirements which could not have been foreseen prior to the enactment of the statute, so that it would be inequitable and unjust to give it retrospective application.

Recognizing the force of this contention of the Attorney-General, we have reeaxamined the scope and purpose of the statute as a whole.

The Attorney-General further contends that section 2 of the statute, properly construed, means that "any counties which had, under existing laws, assumed liability would continue to be governed by existing laws," and that no agreements previously made between the State and its several counties are in any way affected by the statute.

Section 1 of the statute broadly provides that the State shall bear the expense of all rights of way for state highways, including the damages and costs incident to their acquisition, whether by condemnation suits or otherwise, and that no county shall be liable therefor "unless and until such county or counties shall have first entered into an agreement or agreements with said Department to cooperate therein, and then only to the extent of such agreement or agreements."

We deem it necessary to quote in full sections 2 and 3:

"SEC. 2. *Be it further enacted,* That the provisions of Section 1 of this Act shall apply to all rights of way, and incidental damages and costs, heretofore designated, adopted and taken over or sought to be taken over by said Department as and for a part or parts of any of the highways therein referred to, whether such projects have been completed or are now under construction or yet to be constructed, or whether such rights of way are now involved in litigation in any of the courts of the State or are merely in dispute as between said Department and the county or counties affected upon the question of their respective liability therefor; *provided,* there shall be excluded from the provisions of this Act all cases, whether in pending suits or otherwise, wherein such county or counties shall have entered into an agreement or agreements with said Department to cooperate under existing laws or the question of liability shall have been determined and settled as between them by mutual agreement.

"SEC. 3. *Be it further enacted,* That no county shall be deemed to have entered into an agreement to cooperate with said Department upon any State or State and Federal Aid Highway project unless it be thereunto first authorized by resolution of its Quarterly County Court regularly adopted upon and after submittal to that body by said Department of a proposal thereto in proper form, setting forth in detail the proposed improvement with location and routing, the landowners and their respective properties in areas and improvements affected thereby and, if required, the approximate damages and costs thereof."

The Act clearly expresses the general purpose and intention on the part of the State to relieve the several counties of any further payments for the cost of rights of way for state highways. The expressly retrospective provisions of section 2 are very specific, and the exclusion of specific instances is accomplished by a proviso which by its terms applies both retrospectively and prospectively.

The proviso in section 2 excludes from the application of the Act "all cases, whether in pending suits or otherwise, wherein such county or counties shall have entered into an agreement or agreements with said Department to cooperate under existing laws or the question of liability shall have been determined and settled as between them by mutual agreement." The phrase "'shall have'" appears twice in this proviso, and a similar use of this future perfect tense is found in section 1, in the provision expressly excluding a county from liability "unless and until such county or counties shall have first entered into an agreement," etc. This idea of futurity is preserved in section 3, in the provision that "no county shall be deemed to have entered into an agreement to cooperate," etc.

The idea literally conveyed by the use of the future perfect tense, expressed by the phrase "'shall have,'" is that it applies to some event taking place in the future. Future perfect tense is defined by Webster as "the tense of a verb that denotes a future act or event as past in relation to a given future time." Whether this literal meaning is to be followed may be controlled by the context. See cases cited in Words & Phrases (First Series), vol. 7, p. 6471.

■ Giving effect both to the literal meaning of the words used and to the general purpose and intention of the statute, as evidenced by the context, we are persuaded that the agreement to cooperate under existing laws, contemplated by the proviso in section 2 of the statute, is an agreement entered into by a county or counties after the enactment of the statute, and before payment is made.

As pointed out in the opinion heretofore filed, it was the statutory duty of each county to furnish the necessary rights of way for all state highways within its boundaries, prior to the enactment of the Act of 1931. An agreement then entered into by a county to furnish such rights of way placed no burden on the county which it was not already bound by statute to satisfy. It was therefore a mere matter of form, in recognition of a statutory obligation, that Dickson County, in accepting the proposal of the State Highway Department for the construction of a highway at the joint expense of the state and county, agreed to furnish the necessary rights of way. This agreement had no effect upon the rights or obligations of either the state or county, as the law then existed. The State Highway Department had no authority at that time to expend any money under its control in payment of the cost of acquiring rights of way.

No reason, either of fact or of law, is apparent therefore for making the exclusion of a county from the benefits of the Act of 1931, depend upon the fact that it had theretofore entered into an agreement to furnish rights of way, when counties equally obligated by statute are relieved of that burden by retrospective enactment. To so construe and apply the Act of 1931, would be merely to penalize those counties which agreed to fulfill an obli-

gation cast upon them by law. We do not think the legislature should be charged with intending such an inequitable result, unless clearly expressed.

This being the situation of the counties when the Act of 1931 was enacted, and a retrospective application being declared by express provisions, it seems clear that the excluding proviso should be given its literal meaning, and that an agreement which a county "shall have entered into" is an agreement which a county shall have made after the enactment of the statute, when the effect of such an agreement was and could have been known by the officers of the county acting for it.

We think the construction of the language of the proviso contended for by the Attorney-General would render it inherently inconsistent with and contradictory to the principal clause of section 2, which is very specific in its direction that the exclusion of county liability shall apply to "all rights of way . . . heretofore designated, adopted and taken over . . . whether such projects have been completed or are now under construction or yet to be constructed, or whether such rights of way are now involved in litigation," etc. This broad language could hardly have been employed except with the intention that it express the general rule to be followed and applied with respect to rights of way already acquired but not paid for. The exception excludes cases in which counties shall have agreed "to cooperate under existing laws." Practically all the highways constructed prior to 1931, were constructed under agreements binding the several counties to cooperate with the State Department in the highway projects within their respective boundaries. If therefore the excluding clause be

given the construction contended for, it becomes the principal clause of the section, and the broad language preceding it can be applied only to the exceptional cases in which the State Department had constructed a highway with no cooperation from the county in which it is located.

Looking to the caption or title of the Act, it appears that the legislative purpose is there expressed to assume for the State all rights of way expense, "when the county or counties affected thereby shall not have agreed to cooperate therein; . . . to define the requisite agreement to cooperate." Not only does the language of the caption employ the phrase "shall have," as in the body of the Act, but it proposes that the Act shall define "the requisite agreement to cooperate," necessary to exclude a county from the new policy; indicating clearly that the particular and definite agreement defined in section 3 is the agreement to cooperate referred to throughout the Act, and that no general agreement of a county, made before the Act was enacted, would suffice to exclude it from the benefits of the Act.

It will be further noted that the language of the proviso in section 2 refers to "this Act" and not merely to "this section." It excludes from the "Act" all cases wherein a county "shall have entered into an agreement or agreements with said Department to cooperate under existing laws." Section 3 defines the conditions under which a county "shall be deemed to have entered into an agreement to cooperate with said Department." The phrase defined in section 3 is the phrase used in the proviso of section 2 as well as in section 1. We are convinced that throughout the Act the agree-

ments of a county referred to are agreements to be made after the enactment of the Act.

The Attorney-General cites and relies upon the generally accepted rule of construction that a statute will not be given a retroactive application unless in accord with a clearly expressed legislative intention. We think there can be no doubt that such intention is clearly expressed in the statute now before us, in so far as the effect is that the State has voluntarily released its several subdivisions from a burden it had previously imposed upon them. But the rule invoked is persuasive against the contention that the legislature intended to exclude a county from the benefits of the new fiscal policy of the State because such county had previously "agreed" to carry a burden with which it was already charged by the existing law.

The purpose of the proviso of section 2, as herein construed, and as defined in section 3, is to authorize a county thereafter to enter into an agreement, with the State Department of Highways, to cooperate in the construction of a state highway under the laws existing prior to the enactment of the statute of 1931, thereby voluntarily assuming the burden of furnishing rights of way, notwithstanding the changed general policy of the State that such burden be borne by the State Department.

As we have herein construed it, the Act is in complete accord and harmony with the legislation referred to in our opinion heretofore filed, by which the State has undertaken to reimburse the counties for their major expenditures in highway construction.

For the reasons stated herein, the judgment heretofore entered will stand in full force and effect.

MR. JUSTICE COOK does not concur in this disposition of the petition to rehear, but holds that the construction of the Act made in the opinion heretofore filed should be adhered to.