## GOVERNMENTAL RESEARCH BUREAU, INC. v. WALTER H. BORGEN AND ANOTHER.[1]

July 11, 1947.

No. 34,429.

[1]Reported in 28 N. W. (2d) 760.

314

*Holmes, Mayall, Reavill & Neimeyer,* for appellant.

*Thomas J. Naylor,* County Attorney, and *Harry E. Weinberg,* City Attorney, for Walter H. Borgen, individually and as county auditor of St. Louis county, and the City of Duluth, respondents.

MATSON, JUSTICE.

Appeal from a declaratory judgment construing tax-levy provisions of the home rule charter of the city of Duluth and the applicability to said city of L. 1945, c. 453.

On December 17, 1946, plaintiff commenced an action in the district court of St. Louis county for a declaratory judgment construing § 54, paragraph 10(b), of the Duluth home rule charter, determining the maximum per capita tax levy which might be made by the city in 1946 for the year 1947. In addition, plaintiff sought a construction of L. 1945, c. 453, to determine whether it authorized the levying by the city of any amount in excess of the per capita limit set forth in § 54, paragraph 10(a), of the charter.

Section 54 of the charter grants to the city council its taxing power and prescribes limits thereon as follows:

"Section 54. There shall be maintained in the City treasury the following funds for the support of which the council may levy an annual tax:

[Here follows a list of ten funds.]

"10. (b) In determining the population of the City of Duluth any one year for all of said funds, not including funds numbered 1 and 2, *shall not exceed fifteen (15) dollars per capita* of the population of the City of Duluth, and a levy in excess of such limitation shall be void as to such excess.

"10. (b) In determining the population of the City of Duluth for the purposes of subsection 10 (a) preceding, the enumeration of the inhabitants of said city by the last preceding national census shall be taken as the basis of calculation and to such census enumeration shall be added two and six-tenths (2 6/10) per cent thereof, *for the first full year that shall have elapsed* after the year in which such census was taken and for each succeeding year shall be added two and six-tenths (2 6/10) per cent of the number of inhabitants for the previous year as so determined. Whenever a new census shall be taken by the general government the enumeration of the inhabitants of said city thereby shall automatically adjust itself as a new basis of calculation hereunder." (Italics supplied.)

Paragraph 10(a) limits the amount levied in any one year for the enumerated funds, except funds 1 and 2, to an amount not in excess of $15 per capita. Paragraph 10(b) prescribes the method of deter-

mining the population for the purposes of levy within that limit. By § 58, each year the mayor and commissioners prepare the budget for the next ensuing year, and the city council determines the amount to be raised by taxation for such next ensuing year. Not later than October 10 of the year in which these determinations are made, a statement of the amounts so determined must be submitted to the county auditor, who "shall thereupon raise the same by tax levy as by law provided."

On October 10, 1946, the council certified to the county auditor the amount of $1,768,394.50 as levied for 1947, subject to the per capita limit. This amount is only 50 cents less than the limit arrived at by determining the population for 1947 on the basis of the 1940 census and adding 2.6 percent of that population for each succeeding year, including the year 1946, in which the levy was made, although such year had not then elapsed. It is plaintiff's contention that paragraph 10(b) permits the addition of the percentage adjustment only for years fully elapsed at the time of making the levy, and that therefore the inclusion of 2.6 percent for the year 1946 was unlawful and resulted in an excessive levy to the extent of $44,819.50. If plaintiff is correct in its interpretation of the charter, that excessive amount is void.

Plaintiff also contends that the levy of $42,444 is not authorized by L. 1945, c. 453, § 2, because the terms of that law limit its application to those cities with a *millage* limitation on taxation. It maintains that Duluth, having a per capita limitation, is excluded from its operation. This levy is admittedly in excess of the per capita limit and derives any validity it has from L. 1945, c. 453, § 2. Thus, if plaintiff is correct in its contention that the law does not apply to Duluth, this levy is void as in excess of the per capita limit.

The district court found against plaintiff on both issues, and by its judgment determined that in levying taxes in 1946 for the year 1947 paragraph 10(b) of § 54 of the charter permitted a 2.6 percent increase for each of the years from 1941 to 1946, both inclusive, and further that L. 1945, c. 453, is applicable to the city of Duluth

and permits, to the extent defined by its provisions, a tax levy in excess of the per capita limitations specified by the charter.

Plaintiff contends that the language employed in paragraph 10(b) of § 54 plainly and without ambiguity conveys the definite meaning that there can be no increase in the population base with respect to the year during which a tax levy is made under paragraph 10(a). If language is unambiguous and clearly expressive of a definite meaning or intent, there is no room for construction, and the meaning or intent so expressed must govern. Martinka v. Hoffmann, 214 Minn. 346, 9 N. W. (2d) 13. A clearly expressed intent, however, is derived from the natural import of language in conveying a certain and specific meaning to the obvious exclusion of other meanings. Clearly, we do not here have that situation. Ambiguity results from the use of the words *"shall have elapsed."* If the words "shall have" are given a strict grammatical construction, their meaning will be contrary to the interpretation adopted by plaintiff. Our own court, as well as other courts, has on occasion ascribed to the words "shall have" a retrospective as well as a prospective meaning. See, Mason & Craig v. Heyward, 5 Minn. 55 (74) ; Norris v. Sullivan, 47 Conn. 474; 39 Wd. & Phr. (Perm. ed.) pp. 136-140. Construction is necessary, therefore, to determine if it was intended that at the time of the making of a levy the 2.6 percent increase in the tax base should be accorded only to a year that has fully elapsed or whether such increase should be allowed at the time of the making of the levy with respect to the current year which had not then fully elapsed.

Charter or statutory provisions for the imposition of taxes are to be given a fair and reasonable construction in order to effectuate the legislative intent. State v. Western Union Tel. Co. 96 Minn. 13, 104 N. W. 567; State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056; State v. Crete Min. Co. 164 Minn. 273, 204 N. W. 932. In the Western Union case we said (96 Minn. 18, 104 N. W. 570) :

"No consistent rule for the interpretation of tax laws has been laid down by the authorities. Precedents can be cited from courts

of high standing in large numbers to sustain almost any view contended for. The construction is sometimes aggressively hostile to the state * * *, requires the resolution of doubts against it * * *, and denies the propriety of applying thereto any equitable considerations * * *. More frequently the construction is merely strict. 'A tax cannot be imposed without clear and express words for that purpose.' Pollock, C. J., in Gurr v. Scudds, 11 Exch. 191, approved in U. S. v. Isham, 17 Wall. 496, 504, 21 L. ed. 728, and in Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. ed. 853. In an increasing degree, however, the tendency is to construe tax laws, not literally, but liberally, to effectuate their manifest and reasonable purpose, and in the light of surrounding circumstances. * * * 'Revenue statutes are not to be regarded as penal, and therefore to be construed strictly. They are remedial in their character, and to be construed liberally, to carry out the purposes of their enactment.' Swayne, J., in U. S. v. Hodson, 10 Wall. 395, 406, 19 L. ed. 937. * * *

"* * * Usually a construction, liberal to the state, is applied to the earlier stages of tax proceedings which are anterior to the attempt by the state to collect the tax, as to the method of taxation and the determination of a sum to be collected as a tax; while a construction, strict as against the state, is applied to the later proceedings to seize and sell property in satisfaction of, or otherwise to collect, the tax as thus ascertained."

Our holdings have not been consistent, in that we have also expressed the rule that where a statute is capable of two constructions and the intent of the legislature is in doubt, such doubt should be resolved in favor of the taxpayer.[2] Where penalties and forfeitures are not involved, there is no occasion to depart from the standard of reasonable construction applied to other statutes. There is no

[2] Cf. State ex rel. Western Union Tel. Co. v. Minnesota Tax Comm. 132 Minn. 93, 155 N. W. 1061, and State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 207 N. W. 727, with State v. Western Union Tel. Co. 96 Minn. 13, 104 N. W. 567; State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056; State v. Crete Min. Co. 164 Minn. 273, 204 N. W. 932; and State v. St. Paul Trust Co. 76 Minn. 423, 79 N. W. 543.

basis for assuming that the public interest and the interest of the individual are inimical to each other. Cooley in his work on Taxation (4 ed.) (Vol. 2) § 505, after pointing out the distinction to be made between penalty or forfeiture provisions and those relating to the assessment and collection of the tax, says at p. 1123:

"* * * Revenue laws are not to be construed from the standpoint of the taxpayer alone, nor of the government alone." And at p. 1128: "* * * But there can be no propriety in construing such a law either with exceptional strictness amounting to hostility, or with exceptional favor beyond that accorded to other general laws. * * * The construction, without bias or prejudice, should seek the real intent of the law; * * *." And at p. 1130: "The provisions of tax-laws, like those of other statutes, are to be given a reasonable construction."

The better rule, and the one we adopt, is that statutes imposing taxes and providing means for the collection of the same should be construed strictly insofar as they may operate to deprive the citizen of his property by summary proceedings or to impose penalties or forfeitures upon him; but otherwise tax laws ought to be given a reasonable construction, without bias or prejudice against either the taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes subserve.[3]

We come now to an application of the rule of reasonable construction in the instant case. Where the words of a law are not explicit, the purpose or object to be attained by the law may be considered in ascertaining the intended meaning. M. S. A. § 645.16 (4). Undoubtedly the purpose of paragraph 10 (b) of § 54 was to provide

[3] See, State v. Western Union Tel. Co. 96 Minn. 13, 104 N. W. 567; State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056; State v. Crete Min. Co. 164 Minn. 273, 204 N. W. 932, above cited; and State v. St. Paul Trust Co. 76 Minn. 423, 79 N. W. 543; Kimball v. Potter, 89 N. H. 234, 196 A. 272; 2 Cooley, Taxation (4 ed.) §§ 503 to 506; Black, Interpretation of Laws (2 ed.) § 145; 3 Sutherland, Statutory Construction (3 ed.) § 6703; 6 Dunnell, Dig. & Supp. § 9173; 20 A. B. A. Jour. 12.

an expanding tax base geared to an estimated normal annual increase in population, in order that the available tax income might keep pace with the expanding needs of a growing population. In the light of this purpose, it is not to be assumed that it was intended to adopt a rule that in its operative effect would omit a year by being always one year behind. The needs of a growing population are current and not always one year in arrears. Where the law is susceptible of more than one meaning, the court will not adopt an interpretation defeating its purpose and the consequence of which is to establish a tax limitation not in accord with recognized current needs. M. S. A. § 645.16(6). In determining the meaning to be ascribed to words and phrases which are not explicit and which are not otherwise controlled by their context, consideration may also be given to the pertinent rules of grammar. M. S. A. § 645.08. The language of a statute will be construed in harmony with the ordinary rules of grammar, unless such construction clearly violates the legislative intent. State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244. The court will not assume that the draftsman was a bad grammarian. State, Alden, pros., v. City of Newark, 40 N. J. L. 92. The words "shall have" involve a use of the future perfect tense.

"The idea literally conveyed by the use of the future perfect tense, expressed by the phrase 'shall have,' is that it applies to some event taking place in the future. Future perfect tense is defined by Webster as 'the tense of a verb that denotes a future act or event as past in relation to a given future time.' Whether this literal meaning is to be followed may be controlled by the context." Baker v. Donegan, 164 Tenn. 625, 633, 52 S. W. (2d) 152, 153. See, State, Alden, pros., v. City of Newark, *supra;* Dewart v. Purdy, 29 Pa. 113.

Clearly, in accordance with the rules of grammar, the use of the words "shall have" refer to the event or time in the future when the full year has actually elapsed or expired. In other words, the 2.6 percent increase was intended to be applicable to the year as a unit and as completed by its future expiration. If the draftsman had in-

tended otherwise, he would have used, with little change in context, the word "has" and not the words "shall have." In establishing a formula of calculation as a basis for future tax levies, the draftsman obviously used language in a prospective sense and not retrospectively. The tax levy made in 1946 for the year 1947 properly took into consideration the full year of 1946, which had yet to elapse in the future.

 Necessarily involved herein is a construction of L. 1945, c. 453, which provides:

"An act relating to taxes on money and credits and the assessed valuation thereof for purposes of debt limitations and classifications, authorizing counties, towns, cities, villages and boroughs to levy taxes *in excess of any millage limitation imposed by law or home rule charter* upon any county, city, village, borough or town, to replace their share of the tax on money and credits, as assessed and apportioned to them prior to the passage of this act, and amending Laws 1943, Chapter 656, Section 30.

\* \* \* \* \*

"Section 1. Laws 1943, Chapter 656, Section 30, is amended to read as follows:

[Exempts money and credits from taxation for 1943 and subsequent years.]

"Sec. 2. **Municipalities authorized to levy tax.** Any county, city of any class, village, borough, or town, may, *notwithstanding any millage limitation imposed by law or home rule charter,* levy a tax in excess thereof, but not in excess of the tax on money and credits, assessed in said political subdivision for the year 1942, and apportioned to it in 1943 as provided in Mason's Minnesota Statutes of 1927, Section 2349." (Italics supplied.)

The obvious purpose of this statute is to enable cities to recoup the loss in taxable income which they suffered through the repeal of the money and credits tax law. Plaintiff contends, however, that this section applies only to cities subject to a *millage* tax limitation, and not to Duluth with its *per capita* limitation. In the body or

operative portion of this statute, we have the words "notwithstanding any millage limitation." The word "notwithstanding" is the equivalent of the words "in spite of." Are these words restrictive in their use or meaning so as to limit the application of the statute to only those counties, cities, and villages that operate subject to a millage limitation, or are they merely words of emphasis to accentuate that the right to a replacement source of income shall not be defeated by any tax-levy limitation? Usually tax-levy limitations are expressed in terms of millage. The intent of the legislature is not to be defeated by placing a narrow or technical construction upon words if the context and the purpose of the statute as a whole indicate that they were used in a popular sense with a broader meaning. Where the words are not explicit, the object of the statute, the mischief to be remedied, and the consequences of a particular interpretation may be considered in ascertaining legislative intent. M. S. A. § 645.16 (3, 4, 6) ; 6 Dunnell, Dig. & Supp. § 9173. Statutes are to be so construed as to suppress the mischief and advance the remedy, to promote rather than defeat the purpose of the legislature. State v. Bean, 199 Minn. 16, 270 N. W. 918; 6 Dunnell, Dig. & Supp. § 8962. Obviously, all cities, regardless of whether they operate under a millage or a per capita limitation, suffered alike when the money and credits tax law was repealed. Clearly, the statute was designed to provide a remedy by way of a replacement tax to offset the loss. All cities were in the same predicament. Are we to ascribe to the legislature an intent of limiting the relief given to all cities except those operating under a per capita limitation? An exception of this kind would have no reasonable relation to the needs of the adversely affected municipalities. In construing language susceptible of more than one meaning, the court will not adopt an interpretation which ascribes to the legislature an intent to bring about an absurd result. Township of Equality v. Township of Star, 200 Minn. 316, 274 N. W. 219; 6 Dunnell, Dig. & Supp. § 8947. Obviously, so to classify cities for legislative purposes, without any reasonable relation to the purpose or subject matter of the act, namely, the need for tax-income relief, would raise a grave

question as to the constitutionality of the enactment. In ascertaining legislative intent, there is a presumption that the legislature did not intend to violate the constitution or to bring about a result that is absurd. M. S. A. § 645.17 (1, 3). In addition to all these considerations, we have the fact that the very purpose of the statute was remedial in seeking to relieve cities from a financial difficulty caused by a repeal of the money and credits tax law. As a remedial statute, it is to be construed liberally for the advancement of the remedy. 6 Dunnell, Dig. & Supp. § 8986, and cases there cited; 50 Am. Jur., Statutes, §§ 392, 393. We find nothing in the statutory preamble to change the result. Fundamentally, the purpose of the statute was to apply to all cities, whether their tax-levy limitations were on a millage or a per capita basis, and we so hold.

The declaratory judgment of the trial court is affirmed.

Affirmed.

[1] Reported in 28 N. W. (2d) 771.